**OCT. TERM 1839.**

Morton, vs, Reeds.

# MORTON v. REEDS.

1. It is error in the court to give an instruction that takes the whole case from the jury.

2. In cases where the proceeding is either summary or *ex-parte*, and especially where the same is in derogation of common right, strict proof is necessary that the requisites of the law have been complied with.

3. The Auditor's certificate required—upon the sales of lands for taxes —to be transmitted to the recorder of the county wherein the real estate is situated, by the provisions of the 11th sec. of act of Jan'y 3rd, 1827, for levying, assessing and collecting state and county taxes, is only evidence of his own acts.

4. Although the certificate of the auditor, that the provisions the law have been complied with, is rendered by the act *prima facie* evidence of the facts contained in such certificate, yet the law relates solely to the acts of the auditor, and to make the certificate even *prima facie* evidence of such facts, it is necessary that it should contain a detailed statement of the performance of the particular duties enjoined by law upon the auditor.

5. Where the certificate merely states in general terms, "that the provisions of the law in such cases made and provided, have been complied with," it is no evidence that the pre-requisites of the law— even so far as relates to the duties of the auditor—have been complied with; indeed such a certificate proves nothing.

6. In the case of lands sold for the non-payment of taxes, the party claiming under the sale must show that all the pre-requisites of the law have been strictly complied with.

7. The general rule, that all public officers are presumed to have done their duty until the contrary appears, is limited and restrained by the rule, that in all summary and *ex-parte* proceedings, the party claiming under them must make strict proof of the performance of every pre-requisite of the law. The former may be the general rule, and the latter the exception, but the former rule never was applicable to cases like the present.

1. Tompkins Judge dissenting; Holding that the Auditor knew officially, by the collectors' return, that the land in controversy had been assessed in 1831—that appellants grantor was a non-resident of Lincoln county—that his taxes for that year are unpaid, and that being thus known to be a non-resident of Lincoln county, he could not in legal contemplation, be the owner of any personal property in that county, and if he were such owner the statute no where intimates, that the collector is to seek for the personal property of a non-resident to levy on in order to pay taxes due on his land.

2. That the deed of the Auditor to the purchaser of land at a sale for taxes, conveys to the purchaser a title *prima facie* valid.

3. That the Auditors certificates made under the provisions of the 11th section of the act of January 3rd 1827 were in conformity with the law, and that they should have been received as evidence *prima*

*facie* that every provision of the law preparatory to the sale of the land, and in making that sale, had been complied with; and that it was sufficient for the auditor to state in his certificate in general terms, "that the provisions of the law in such cases cases made and provided have been complied with."

4. That the tax of 37½ cents imposed by the 20th sec. of the act of 3rd Jan. 1831 on each tract of land advertised to be sold for taxes, as an equivalent for the expenses of advertising &c. is constitutional.

5. That it was not the intention of the legislature that no lands should be sold for taxes at a less price than one dollar and twenty five cents per acre, and the sale of the land in controversy is not void because the *whole* tract was sold for taxes, it not appearing that any person was willing to pay the taxes for less than the whole tract of land.

6. That the appellant did not gain any precedence on account of the deed to him for the land in controversy being recorded prior to that of the auditor to appellee's grantor, as the 25th sect. of the revenue law of 1825 provides that there shall be a perpetual lien on all lands sold for taxes, &c.

7. That the proofs of the correctness of the auditor's proceedings being all matters of record—which the law presumes to be, in this case good *prima facie* evidence—and the plaintiff in the circuit court having offered no evidence to invalidate those proofs, it became the duty of that court to direct the jury to find for the defendant.

Appeal from Lincoln circuit court.

Bates for appellant.

1st. The Auditors sale to Suggett for the non-payment of taxes &c., is illegal and void; because, 1st. The proceeding being by special act, in derogation of common right, the statute itself must be strictly construed against the power. 2nd. The proceeding being ex-parte and under a special authority, the greatest strictness is required; nothing can be presumed in favor of the act, but every requisite of the law must be shown to have been complied with, Pit. R. 349–5 Cond R. 28. 2 Cond. R. 151, and authorities collated, at the end of that case. 4th Cond. R. 395. 19 J. R. 7.

2nd. The certificate of the auditor, under the act of 3rd January 1827, cannot help out the def'ts title, because, 1st. The certificate is not such as the law requires; it states broadly that the requisites of the law have been complied with, whereas it should have stated the facts, and have left the court to judge what the law requires. 2nd. The certificate, if in the best form could only authorize the acts of which the officer had official cognizance, and not acts foreign to his office, as is claimed by the defendant here. U. S. vs.

E

Jones adm'r of Ow. 8 Pet. R. 375. 1 Mo. Rep. 537. 2 Bibb 573. Acts of 1826-7, p. 149.

3rd. There is no proof in any part of the proceedings that Paul Chouteau, the former owner of the land, was a non-resident of the county, and if not a non-resident, the auditor had no power to sell. R, Co. 1825, p. 676, § 36.

4th. Assessment for taxation is a necessary pre-requisite. If it exists at all, it must be of record in the county, and is not the subject of proof by the auditor's certificate, yet there is no proof of that fact. Assessor to value property, &c. R. C. 1825, p. 667 § 11. To make general assessment lists p. 669, § 17, to be corrected by the court, &c., § 18, 19.

5th. There is no proof of any legal advertisement of the auditors sale, and 1st. The copy in the record is defective in itself, and there is no proof of its being printed and published. 2nd. There is a total absence of proof that three copies of the advertisement were sent to the sheriff of Lincoln county, and by him set up, as required by the act of 18th January 1831, § 4.

6th. By the copy of advertisement and certificate of purchase contained in the record, it appears that the auditor sold the land not only for taxes and penalties but for interest and costs which was illegal.

7th. It appears by the record that the land was sold not only for State and County taxes, interest, penalties and costs, but for two additional taxes imposed by the act of 3rd January 1827, § 20, which additional taxes were illegal, not being in proportion to the value of the land. See Const'n art. 13th, § 19.

8th. The land could not be sold for the non-payment of taxes, even supposing the owner a non-resident of the county, until there was an ascertained defect of personal property. See R. C. of 1825 § 21, to 28, title Revenue. By the 27 sec. the collector had a general power to distrain goods.

9th. But if no such power to distrain were expressly granted, it is a necessary incident to the power and duty to collect the taxes.

10th. The goods being first liable, the land could not be sold without an official return or statement (and that on the

record) of nulla bona. 2 Cond. R. 151. 5th Cond. R. 28—
4 Pet. R. 366.

11th. Supposing all the legal pre-requisites fulfilled, still the whole tract could not be sold but only so much as necessary, R. C. of 1825 Revenue p. 677, § 36—2 Cond. R. 151, and the 17 sec. of same act fixed the minimum rate of assessment at $1,25 per acre, which bound the State both as legisator and as contracting party. Revised Code 1825, p. 670, § 17.

12th. Supposing the auditor's sale formal and regular, still the defendants title deeds are invalid and as against the pl'ff. for want of record. See the date of the recording of the deeds, and R. C. of 1825, p. 674, § 28, same Code, p 221, § 14.

13th. The instructions asked and refused on part of the pl'ff are covered by the foregoing points.

14th. The instructions given on the part of the def't. are plainly wrong, and 1st. The first instruction leaves to the jury a question purely of law. 2nd. The second and third take from the jury every question of law and fact, and assume the whole case.

## Jameson for defendant.

1st. That the power to enact laws for levying, assessing and collecting taxes to support the government necessarily implies the power to prescribe the manner and form by which those taxes shall be coerced, if not paid in conformity to law; and also necessarily implies the power to prescribe what evidence shall be sufficient, and what prima facie sufficient to show a good and valid title in the purchaser of lands sold for taxes due thereon.

2nd. That the land in question was regularly sold according to law, as the property of a non resident. See record and revenue laws.

3rd. That the auditor's certificate is in accordance with the provisions of the law. See the record and also page 49 and 50 of the revenue act of 1826-7.

4th. That if the land is not redeemed in two years from the date of sale, the title vests in purchaser. See digest of

1825, pages 675–6–7 & 8—18th Johnson's Reports 441— 2nd Pet. Cond. Rep. 151.

5th. That an officer is presumed to have done his duty until the contrary is proved, 3rd Starkie 1249—Bullers Nisi Prius 298—Viner's abridgement, title Evidence, and Hardens reports, 362.

6th. That the Revenue law in the digest of 1825 gave the selling of non-resident's lands for taxes to the auditor and treasurer, but the act of 1829, page 37, gave it to the auditor alone, (18th Johnson's Reports 441) Revenue laws of 1825 in relation to assessment. Sec. 2, county court to appoint assessor; 3rd to take oath, penalty &c.

Statement of the case made, and opinion of the court delivered by M'Girk, Judge.

Morton the plaintiff brought an action of ejectment against the defendant in the circuit court of Lincoln county to recover possession of a tract of land, lying in that county, containing two thousand arpens. The defendant pleaded not guilty. On the trial, the plaintiff produced a title or deed from one Paul Chouteau to himself for the land, and also showed the land had been granted to Chouteau by the Spanish government, and confirmed by the American government. To defeat the plaintiff's right to recover, the defendant sets up title in himself by a deed from one Joseph Suggett to him, and then shows a deed from the auditor of Public Accounts of the State to Suggett, with the certificate of the auditor that the tract of land was sold to Suggett for taxes due the State. There was other evidence in the case, and on the trial the defendant had judgment, to reverse which the plaintiff prosecutes his writ of error. I will now proceed to detail the balance of the testimony, and state the points and objections, as they occurred in the circuit court. The land was sold for taxes due for the year 1831. The defendant gave in evidence to support his defence a certificate of Elias Barcroft, Auditor of Public Accounts for the State, in substance as follows, to wit: I do hereby certify that the collector of the county of Lincoln did deliver according to law to said Auditor a list containing the following described tract, lot or parcel of land, lying in

said county (then the tract is described) which tract or lot was assessed and taxed in the name of said Paul Chouteau, as a non-resident of said county, for the year 1831, with the sum annexed thereto as a State and county tax due thereon and unpaid, for the year 1831. Signed E. Barcroft, Auditor. The Auditor then charges the amount of the State and county taxes, amounting to about the sum of nine dollars; he also charges thereon as a tax twenty-five cents for the State and twelve and one half cents for the county, as the tax law requires him to do. The certificate then further goes on and says, "and the amount of taxes not having been paid on or before the first day of December 1831, nor were the taxes or interest, accrued thereon since, paid on or before the same was advertised for sale, whereupon the said Auditor did, by advertisement dated on the 10th day of April 1832, advertise, according to law, the aforesaid tract of land for sale to satisfy the taxes, penalties and costs, due and unpaid, to be sold on the 15th day of June 1832 at the door of the Auditor's office; reference being had to the record of the same, at the recorders office of said county of Lincoln, will more fully appear, and that on the 15th day of June, the said State and county taxes, and interest being still unpaid, the said Auditor then charged, in addition to the taxes as assessed, at the rate of 5 per centum per month thereon, from the first day of December 1831, amounting together to the sum herein expressed and costs, and I did thereupon expose to public sale, on the 18th day of June 1832, (continuing the sale from day to day) at the door of said Auditors office, pursuant to law, and the advertisement aforesaid, the following described tract, lot or parcel of land, or so much thereof, as was sufficient to satisfy and pay the taxes, penalties and costs then due and unpaid aforesaid, and did thereon sell the quantity of land or lot, or so much as is hereinafter set forth expressed and designated in words and figures, for said taxes, penalties and costs, to wit, 1701 40-100 acres of land assessed in the name of Paul Chouteau being survey 1744, Township 50, Range 1, W. on Cuiree, amount of taxes, penaltes and costs nine dollars and seventy-seven cents: and I do further certify that Joseph R. Suggett, then and

there became the purchaser of the whole of the above mentioned, described and designated tract, lot or parcel of land, for the aforesaid sum of nine dollars and seventy-seven cents, being the amount of taxes, penalties and costs due thereon, and has paid the same into the State treasury according to law," dated Jefferson City 20th June 1832, and signed by the Auditor, which certificate was filed and recorded by the recorder of Lincoln county, on the 13th of January 1836. The plaintiff also read in evidence a deed from the Auditor for the land, dated 25th June 1834, acknowledged in August 1834, and recorded in the recorders office in Lincoln county, on the 14th of January 1836. This deed was not recorded till after the registry of the deed from Chouteau to the defendant; then comes the deed from Mr. Suggett to Reeds. Then the defendant gave in evidence a copy of an advertisement dated Auditor's office, Jefferson City, April 16th 1832, giving notice that, on the 18th of June following, at the Auditors office, in Jefferson City, certain lands of non-residents as described in a tabular list thereto annexed, would be sold for taxes unless the taxes were paid. It appears that in that list were the lands in question assessed, as the list asserts to Paul Chouteau.— Then the defendant gave in evidence a certified copy, from the Auditors office, of a list of the sales made by the Auditor on the 18th and 19th days of June, containing the tract in question, embracing various tracts of land of non-residents for Lincoln county, which list was recorded in the recorders office for Lincoln county. The copy given in evidence was a copy of this recorded copy, as taken from the recorders office in Lincoln county. Then at the end of the list of sales, the Auditor makes the following certificate (to wit:) "I the undersigned, Auditor of Public Accounts of the State of Missouri, do hereby certify that the foregoing is a true copy of the advertisement of the sale of lands and other property sold to individuals, and to the State of Missouri, in part or in the whole for the taxes assessed, and the penalties and costs thereon, at the door of the Auditor's office in the City of Jefferson, on the 18th and 19th of June 1832, lying and being in the said county of Lincoln ; and I do fur-

ther certify that the provisions of the law in such cases made and provided have been complied with. Given under my hand and seal, &c , and signed Elias Barcroft, Auditor." The defendant Reeds then gave some verbal testimony of Mr. Watts, who was the Sheriff of Lincoln county during the years 1831–32 and 33, that several times he received from the Auditor printed advertisements of land, that he thinks they were advertisements from the Treasury department of the State of lands sold for taxes, and thinks he set them up in public places in the county, deeming it his duty to do so; one year he set up three such advertisements one of them on a post in the court house, one at Sutton's mill, and one at Auburn; thinks they were of lands sold, because persons often applied to him to know whether their lands had been sold for taxes, and he referred them to that list; they were large printed papers, about the size of the record book, and containing s everal leaves; he cannot say that he received and set up any such papers relating to the land taxes of 1831; cannot remember the year with any certainty ; Barcroft's name was to the papers, and that he having referred to the record book, B pages 288–9, above set forth, he says he thinks one set of the papers received by him contained the same names, and list of lands as in the tabular statement in the record, but contained more. This is substantially about all the testimony given by either party. If however, any more should be remembered, that may be of importance, I will detail it when necessary. The plaintiff asked the court for six instructions, five of which were refused and the other given. The first one refused was as follows, to wit:

1st. The defendant has not shown in evidence any legal title to the premises in any other person than the plaintiff.

2nd. The deed given in evidence by the defendant, purporting to have been made by the Auditor to J. R. Suggett for the land in question did not convey any legal or valid title to the land.

3rd. The land in question could not be lawfully sold for the non-payment of taxes, unless the same had been previ-

ously regularly assessed for taxation and there is no evidence before the jury of such assessment.

4th. The land in question could not be lawfully sold for the non-payment of taxes unless the sale thereof had been previously advertised publicly according to law, and there is no legal evidence before the jury that the sale thereof was so advertised.

5th. The Auditor of Public Accounts had no lawful authority to sell said land for non-payment of taxes &c., unless Paul Chouteau was a non-resident of Lincoln county, and there is no lawful evidence before the jury of that fact.

The defendant then moved the court for these instructions, as follows:

1st. That if they believe from the evidence that the tract of land in controversy was sold by the Auditor by authority of law for the non-payment of taxes due thereon, and that all the essential requisites of the law had been complied with in making said sale, granting a certificate to the purchaser and in conveying the same to J. R. Suggett, the purchaser at the sale, then they must find for the defendant.

2nd. That the defendant has shown a good legal title in J. R. Suggett, the person under whom he claims the land in question, and that they must therefore find for the defendant.

3rd. That the defendant has shown a better title out of the plaintiff than the plaintiff has shown.

The court then gave these instructions for the defendant. To the refusal to give those asked by him, and the giving the above for the defendant, the plaintiff excepted, and took his bill of exceptions. The jury found a verdict for the defendant, and the court refused to grant a new trial. The cause is brought here by writ of error. The errors assigned by plaintiff's counsel are rather general, but they are that the court refused to give to the jury the instructions asked by the counsel for the plaintiff, and that the court erred in giving the instructions asked for by the defendant. The first position taken by Mr. Bates for the plaintiff is, that the Revenue laws must be construed strictly, and that, in this case, the laws and proceedings being summary and against com-

OCTOBER TERM
1839.

Morton
vs
Reeds.

mon right, must be construed strictly against the power and that in such cases nothing can be presumed, but every requirement of the law must be proved. To support these doctrines, he cites 4 P. R. 349—5 Cond. R. 28—2 Cond. R. 151—4 Cond. R. 395—19 J. R. 7.

Mr. Jameson answers to this point, that in general the law is, as stated, but that first, in this case, the law has been strictly complied with. Secondly, that an officer of the law is by that law presumed to do his duty till the contrary is proved. 3rd Starkie 1249—Bullers N. P. 298—Viners' abr. title Evidence—Hardins R. 362. Upon this doctrine of the defendants counsel, it is supposable by me, the court predicated the second instruction as numbered in this opinion, among those given for the def't; but on the record it is the third. That instruction asserts that the legal title to the land was shown to be in Suggett, and not in the plaintiff, therefore the jury cannot find for the plaintiff. The instruction asserts that the title is not in the plaintiff, and disposes of the whole case, both law and fact; and for that reason is bad, but as the law, arising on the facts, is fairly before the court, I will proceed to examine the case.

*It is error in the court to give an instruction that takes the whole case from the jury.*

The first question is, has the law been pursued in regard to the sale of this land? The plaintiff insists on a strict execution of the law, and strict and legal proof must be made out. This, he says, has not been done. The defendant insists that the law has been duly pursued, and that there is on the record legal proof thereof. I will now pay some attention to the general doctrine invoked by the plaintiff's counsel. I hold it is true that, in exparte and summary proceedings, the law must be strictly pursued, in the case of M'Clung vs. Ross, it was decided by the Supreme Court of the U. S. that under the laws of Tennessee, where lands are sold by a summary proceeding for the payment of taxes, it is essential to the validity of the sale and of the deeds made thereon; that every fact necessary to give the court jurisdiction should appear upon the record, 5 Wheatons R. 116. In the case of Williamson et al vs Peyton's lessee, 4 Wheat. R. 77, Ch. Justice Marshall delivered the opinion of the court. That was a case where lands were sold for the

OCT. TERM
1839.

Morton,
vs,
Reeds.

non-payment of taxes. In that case, the following points were resolved, first, that in the case of a naked power not coupled with an interest, the law requires that every prerequisite of the law should have been complied with. Second, that the party who sets up title must furnish the necessary evidence to support it. If the validity of a deed depends on acts *in pais*, the party claiming under it, is as much bound to prove the performance of the acts as he would be bound to prove any matter of record on which the validity of the deed might depend. Third, in case of sale for the non-payment of taxes, where land is sold, the Marshalls deed is not even prima facie evidence that the pre-requisites required by law have been complied with, but the party claiming under it must shew positively that they have been complied with. There are many other cases cited by the counsel for the plaintiff which go to the same point. The defendant's counsel has cited some decisions from Virginia, which seem to relax this rule, but it appears that the relaxation of the rule depends on legislative enactments of the Virginia legislature. There can be no doubt the legislatures of the several states may make such enactments with regard to the rules of evidence as may suit their views of justice and policy, provided those enactments be constitutional. In Missouri, I take the law to be as laid down in the cases cited by the plaintiffs counsel, that is, that in all cases where the proceeding is either summary or exparte and especially where the same is against common right and against the law, that strict proof is to be required. This principle is in accordance with that declaration of our constitution which declares that no man shall or can be deprived of life, liberty or property without the judgment of his peers or the law of the land; there is no question that peers here means a jury, and the law of the land is the ordinary proceedings in common cases. But as it is conceded that the collection of taxes cannot in general be made by ordinary suits, therefore, of necessity, the proceeding must be summary and ex parte. I admit there is force in the necessity, but I insist this necessity begets another necessity, which is, that the execution of the powers and laws relating to the matter shall be strict-

In cases where the proceeding is either summary or *exparte*, and especially where the same is in derogation of common right, strict proof is necessary that the requisites of the law have been complied with.

OCTOBER TERM
1839.

Morton
vs,
Reeds.

ly pursued, and also strictly proved: otherwise a man may notwithstanding the constitutional inhibition, be deprived of his lands without either the judgment of his peers or the law of the land. For these reasons I conclude the principle invoked by the plaintiffs counsel is sacred in Missouri and I also hold that it applies to this case.

The next point insisted is whether the revenue laws have been strictly complied with. The main dispute between the respective counsel on this point is about the proof as to the question whether the requisites of the law have or have not been complied with? I cannot now refer to the the exact words of the law regarding the collection of taxes, because the laws cannot now be had. The court have no public library to refer to, and the owners of the law books have, for the most part, left Palmyra and closed their offices. I will however speak of these laws as well as I can from memory and the brief before me. The first thing then is that there should be an assessment made, by a person appointed for that business, of all the taxable property in each county; that when that assessment is made, it shall be returned to and corrected by the county court; that there shall be a collector in each county, and that, with regard to non-resident owners of land, he shall make a return of them to the court, and that a list of them shall be made out and sent to the Auditor of Public Accounts; that the Auditor shall advertise all these lands for sale by advertisements, to be printed in some paper printed at or nearest to the seat of government, which publication shall be at least sixty days before the sale, and that the publication shall be continued, &c.; and that the Auditor shall sell the lands of the non-residents on the day appointed unless the taxes be paid; then, when the sale is made, the Auditor shall give the purchaser a certificate of the purchase; that the Auditor shall make out and return to every county where the lands lie, which were sold a tabular statement of the lands sold, to whom sold &c., and certify the same under his hand &c., and that three copies of this statement shall be sent to each county, one of which shall be recorded, and the other two set up by the Sheriff in the most public places. Here let it be remarked

OCTOBER TERM 1839.

Morton
vs,
Reeds.

that the law gives the owner two years to redeem in, and that if, in that time, there is no redemption, the Auditor shall make the purchaser a deed. The law also requires the holder of the certificate of purchase to record his certificate as deeds are recorded. In this case the Auditor has made his first certificate, certifying that the lands were sold, and certifying a copy of his advertisement under which he sold. The law requiring this tabular statement and certificate, after having disposed of this matter, then proceeds to declare that the Auditor shall further certify that the provisions of the law in such cases made and provided have been complied with, which copy of the advertisement so certified and further certified shall be by the recorder recorded in the record of deeds, and a copy of such record, shall be prima facie evidence of the facts contained in such certificate, whenever a sale made under such advertisement shall come in question. See session acts of January 1826, pages 49, 50.

Mr. Jameson counsel for the defendant, insists that this certificate is full and complete evidence that the pre-requisites of the law have been complied with. The plaintiff repels that conclusion. I will in as few words as possible, give my view of the meaning of the law cited, and also will give my view of the force and effect of the certificate. In the first place let it be remembered that in this case the proceeding to divest the owner of his land for the non-payment of his taxes is both summary and ex parte. Then the proof on the part of the purchaser must be strict. I suppose then that the legislature never intended that the Auditor should be expected or required to certify to more than a witness, under the solemnities of an oath, would be required to swear to, and that is nothing more nor less than what he knows. He can swear to what he has done himself, to what he has heard, seen or felt, but as to that which he does not know by one of his senses, he cannot testify to. Surely beyond this the legislature did not expect the Auditor to go. In this case then he could not know whether Paul Chouteau was a non-resident of Lincoln county; he could not be expected to know that an assessment had been made as the law requires. Both these things, in any given case, he might

The Auditor's certificate required upon the sales of lands for taxes—to be transmitted to the recorder of the county where in the real estate is situate, by the provisions of the 11th sec. of act of Jan. 3rd, 1827, for levying; assessing and collecting state & county taxes, is only evidence of his own acts.

Although the certificate

know, but he could not possibly know these things in five hundred or a thousand such cases. I then suppose that the meaning of the law is, that his certificate shall be evidence as to his own act, and as to those he must know before he can certify. The law further says the certificate shall be evidence of the facts therein contained. Then the facts must be certified specially. In this case no facts are certified in detail, at least, not all that the law requires to exist before a sale can be made. The facts, that the advertisement was ever printed in a paper printed in or nearest to the seat of government, and sixty days before the sale, are not set forth, though as to these facts, the Auditor might know the truth, and might certify. These are important provisions of the law, the execution of which would constitute facts which the Auditor has not certified as he might have done. My opinion is then that the facts should be detailed, and for the want of that and other reasons the certificate proved nothing, and that for the want of due proof the advertisement and for the want also of proof of due and legal publication, the court erred in instructing the jury, that the defendant was entitled to recover. I am also of opinion that the proof of the execution of legal requirements to be done after the sale is made is defective. First; there is no proof that the Auditor made the three copies required to be made out and sent to the county of Lincoln; there is no proof that the two to be set up by the sheriff were received and set up, and if there is such proof, that there, is no proof that Paul Chouteau's name and lands were in them. These things in these summary ex parte proceedings require strict proof. It is greatly complained by some that, after the lapse of time, in these cases, if strict proof is required, no tax title can be sustained. My answer to this is that though it may be so, yet that is no reason why great and salutary rules of law should be relaxed or broken down, but in such case no tax title ought to hold, unless the law of the land has been complied with, and because it may be difficult, or exceedingly so, to prove it, this is not a good reason why it should be assumed to have been complied with. If any such claimant apprehends the loss of evidence or the death of witnesses, the

*Marginal note:* of the auditor, that the provisions of the law have been complied with, is rendered by the act *prima facie* evidence of the facts contained in such certificate, yet tho law relates solely to the acts of the auditor, and to make the certificate even *prima facie* evidence of such facts, it is necessary that it should contain a detailed statement of the performance of the particular duties enjoined by law upon the auditor. Where the certificate merely states in general terms, "that the provisions of the law in such cases made and provided, have been complied with," it is no evidence that the prerequisites of th- law—even so far as relates to the duties of the auditor—have been compli-

OCTOBER TERM 1839

Morton vs. Reeds.

ed with; indeed such a certificate proves nothing.

In the case of lands sold for the nonpayment of taxes, the party claiming under the sale must show that all the pre-requisites of the law have been strictly complied with. The general rule, that

law has provided ample means by which he may perpetuate any fact in pais material to his case. With regard to the other instructions refused to the plaintiff, and those given to the defendant, a description of them would lead over the same ground already gone over. I will forbear considering them. Before I conclude this case, I will give some attention to one other point made by the defendants counsel which is that all public officers are presumed to have done their duty till the contrary is proved. This position, unless limited and restrained, is directly against the rule, that in all summary and ex parte proceedings the party claiming under them must make strict proof of the existence of every thing material, otherwise he takes nothing. The rule invoked by the defendants counsel may be the general rule, and the strict proof rule the exceptions, but the rule never was applied to cases like the present, as far as I can learn. My opinion is that the judgment of the circuit court be reversed and remanded for a new trial.

all public officers are presumed to have done their duty until the contrary appears, is limited and restrained by the rule, that in all summary and ex-parte proceedings, the party claiming under them must make strict proof of the performance of every pre-requisite of the law. The former may be the general ru'e, and the latter the exception, but the former rule never was applicable to cases like the present.

### Dissenting opinion of Tompkins Judge.

Morton brought his action of ejectment against Reeds in the circuit court of Lincoln county. The judgment of that court being given against him he appeals to this.

Morton claims under Paul Chouteau by a deed dated the 17th day of August 1831 conveying the land in controversy to Joseph C. Laville and George Morton, and by a deed from the said Laville dated the 6th day of May 1837 conveying the undivided moiety of the said land to the said Morton.

The deed from Chouteau to Laville and Morton was recorded on the 29th day of September 1835, that from Laville to Morton on the 10th day of July 1837. It was admitted that Morton the plaintiff had all the title to the said land which Chouteau had on the 17th day of August 1831, except such title as was conveyed to Joseph R. Suggett by the deed of the Auditor of Public Accounts, and the other

proceedings hereinafter stated, as given in evidence by the defendant. The defendant also admitted the possession in himself of the land in controversy. The defendant on his part gave in evidence 1st. the following certificate of the Auditor of Public Accounts, viz : I Elias Barcroft Auditor of Public Accounts of the State of Missouri, do hereby certify that the collector of the county of Lincoln did deliver according to law to said Auditor a list containing the following described tract, lot or parcel of ground as lying and being in the county of Lincoln aforesaid, which tract of land was assessed and taxed in the name of the person herereinafter expressed as a non-resident of said county for the year 1831 with the sum annexed thereto, as a state and county tax due upon said land, or lot, and unpaid for the year aforesaid, and the said Auditor thereupon charged the same with the aforesaid state and county tax, and the amount of the tax not having been paid on or before the first day of December 1831, nor were the taxes and interest accrued thereon since paid as required by law before the same was advertised for sale, whereupon the said Auditor did by advertisement dated the 10th day of April 1832, advertise according to law the aforesaid tract, lot or parcel of land for sale to satisfy the taxes penalties and costs so due and unpaid to be sold on the 15th day of June 1832 at the door of the said Auditor's office, reference being had to the record of the same, at the recorder's office of the said county of Lincoln will more fully and large appear; upon the said 15th day of June the said State and county taxes and interest being still due and unpaid, the said Auditor then charged in addition to the taxes assessed at the rate of five per centum per month thereon from the said 1st day of December 1831, and costs amounting together to the sum also hereinafter set forth and expressed, and did thereupon expose to public sale on the 18th day of June 1832 continuing the sale from day to day at the door of the said Auditor's office pursuant to law and the advertisement of record aforesaid the following described tract, lot or parcel of land, or so much thereof as was sufficient to satisfy and pay the taxes, penalties and costs then due and unpaid as aforesaid, and did thereupon sell the

quantity of land, or lot, or so much as hereinafter set forth and expressed and designated in words and figures for said taxes, penalties and costs, to wit: 1701 40-100 acres of land assessed in the name of Paul Chouteau being survey No. 1744, Township 50, Range No. 1, West on Cuivre, amount f taxes, penalties and costs nine dollars ninety-seven cents. I do further certify that Joseph R. Suggett then and there became the purchaser of the whole of the above mentioned, described and designated tract lot or parcel of land for the aforesaid sum of nine dollars and ninety-seven cents being the amount of the taxes, penalties and costs due thereon, and has paid the same into the treasury according to law.— Given under, &c.

Auditor's fees paid by Joseph R. Suggett. 25 cents, signed, &c.

This certificate was filed for record and recorded on 30th January 1836 by the recorder of Lincoln county.

2nd. A deed from the Auditor of Public Accounts in the usual form, dated 20th July 1834, recorded in the office of the recorder of Lincoln county on the 14th day of January 1834.

It was admitted by the plaintiff that whatever title passed to the said Suggett by the said deed of the Auditor to him, was passed to and vested in him the said defendant Reeds by deed from Suggett before the commencement of this suit.

3rd. The record of the advertisement and certificate of Elias Barcroft Auditor of Public Accounts, as the same is recorded in the recorders office of Lincoln county, &c., as follows:

Notice is hereby given to all persons whom it may concern, that unless the taxes and the interest thereon at the rate of fifteen per centum per year which may become due on the following described real estate assessed and taxed as belonging to non-residents shall be paid into the state treasury on or before the 15th day of June 1832, the property thus described will then be sold at the door of the Auditor's office in the City of Jefferson, or so much of each tract of land, or lot of ground will be sold as will satisfy the taxes

interest and penalty of five per centum per month to be
computed from the 1st day of December 1831, as may then
have accrued with an additional tax of thirty seven and a
half cents as an equivalent for the costs or expenses of ad-
vertising &c. on each tract of land or lot of ground as may
then remain unpaid of the following lists of lands and lots
situated &c.

Here follows a tabular list of the lands advertised to be
sold, which lie in Lincoln county, of which the tract in dis-
pute is one. Then follows the certificate, viz: I, the under-
signed Auditor of Public Accounts of the State of Missouri
do hereby certify that the foregoing is a true copy of the
advertisement of sale of lands and other property sold to in-
dividuals and to the State of Missouri at the door of the
Auditor's office in the City of Jefferson on the 16th, 18th
and 19th days of June 1832, lying and being in the said
county of Lincoln. And I do further certify, that the pro-
visions of the law in such cases made and provided, have
been complied with.

4. The verbal testimony of Henry Watts. This witness
stated that he acted as sheriff of Lincoln county for, four
years including the years 1831, 32 and 33; that several
times he received from the Auditor, printed advertisements
of land while he was such sheriff; thinks they were adver-
tisements from the Treasury department of the State of
lands sold for taxes; he thinks he set them up in public pla-
ces of the county deeming it his duty to do so; one year he
set up three such advertisements, one of them on a post in
in the court house, one at Sutton's Mill, and one at Auburn;
he thinks they were of lands sold, because persons often ap-
plied to him to know if their lands had been sold for taxes,
and he referred them to that list to ascertain. They were
large printed papers about the size of the recorder's book,
and containing several leaves; he cannot say that he recei-
ved or set up any such papers relating to the year 1831;
cannot remember the year with any certainty. Having re-
ferred to the record of the advertisement in the record
book above set forth, he says he thinks one set of the papers
received by him contained the same names, and lists of lands

OCT. TERM
1839.

Morton
vs
Reeds.

F

OCT. TERM
1839.

Morton
vs,
Reeds,

as are found in the tabular statement of the said record' but contained more. No other testimony was given.

The plaintiff then moved the court to give the jury these following instructions, and they were refused.

1st. The defendant has not shown in evidence any legal title to the premises in any person other than the plaintiff,

2nd. The deed, given in evidence and purporting to have been made by the Auditor of Public Accounts to Joseph R. Suggett for the land in question did not convey any legal or valid title to the said land.

3rd. The land in question could not be lawfully sold for the non-payment of taxes, unless the same had been previously regularly assessed for taxation, and there is no evidence before the jury of such assessment.

4th. The land in question could not be lawfully sold for the non-payment of taxes and for penalties and costs unless the sale thereof had been previously advertised publicly according to law, and there is no lawful evidence before the jury that the sale thereof was so advertised.

5th. The Auditor of Public Accounts had no lawful authority to sell said land for non-payment of taxes, penalties and costs unless Paul Chouteau was a non-resident of Lincoln county, and there is no lawful evidence before the jury that said Paul Chouteau was a non-resident of said county.

On motion of the defendant the court gave the following instructions, viz:

1st. If the jury believed from the evidence that the tract of land in controversy was sold by the Auditor by authority of law for the non-payment of taxes due thereon and that all the essential requisites of the law had been complied with in making said sale, granting a certificate to the purchaser, and in conveying the land to Joseph R. Suggett the purchaser at the sale, under whom the defendant claims, then they must find for the defendant.

2nd. That the defendant has shown a better title out of the plaintiff than the plaintiff has shown.

3rd. That the defendant has shewn a good legal title in Joseph R. Suggett, the person under whom he claims, to

the tract of land in controversy, and that they must therefore find for the defendant.

The instructions asked by the defendant were given and as above mentioned those asked by the plaintiff were refused, and the plaintiff excepted to the giving of the instructions for the defendant, and the refusing of those asked by himself.

The appellant's counsel admits that the case turns entirely on the validity of the tax title, and that all the points arising out of that title are embraced in these instructions, asked by the plaintiff, and as above mentioned refused, and in those asked by the defendant which were given.

For Morton the appellant it is insisted "that the sale to 'Suggett, as evidence on the record, is illegal and void; that 'the proceeding is by special statute in derogation of the 'common law and common right, and therefore the act itself 'must be strictly pursued, and every requirement of the law 'strictly enforced against those who claim authority to strip 'a man of his private property; that this is a plain common 'law principle in accordance with our bill of rights which 'declares that no man shall be deprived of his life, liberty, or 'property, but by the judgment of his peers, or the laws of 'the land; that the books abound with cases in full confir-'mation of this principle. In Ronkendorf vs Taylor's lessee 'the Supreme Court of the United States say, in ex parte 'proceedings under a special authority great strictness is re-'quired. To divest an individual of his property against 'his consent, every substantial requisite of the law must be 'shown to have been complied with. No presumption can 'be raised in favor of a collector who sells real estate for 'taxes, to cover any radical defect in his proceedings; 'and the proof of the regularity of the proceedings de-'volves upon the person, who claims under the collector's 'sale. That this is the uniform spirit of the decisions of the 'Supreme Court of the United States from the earliest to 'the latest cases; that a strong case in point is Stead's ex'rs 'vs. Course; that the appellee relies upon the 11th section 'of the act of January 1827 which provides that the Auditor shall transmit, to the recorder of the county, a copy of the

OCT. TERM
1839.

Morton
vs,
Reeds.

'advertisement of sale certifying that the provisions of the 'law in such cases made and provided have been complied 'with, and that a copy of such record shall be prima facie 'evidence of the facts contained in such certificates, whenev- 'er a sale under such advertisement shall come in question; that 'the defendant in the circuit court relied upon this provision 'as covering all apparent defects, and superseding the neces- 'sity of complying with the particular requisitions of the law 'and that the circuit court, sustaining that view, instructed 'the jury accordingly, which, it is insisted, is entirely wrong. 'Ist. Because the Auditor has not pursued the law, and the 'record does not shew the required certificates. 2nd. The 'act does not make the certificates evidence of opinions, in- 'ferences and matters of law, but only prima facie evidence 'of the facts contained in such certificates; to make the cer- 'tificates evidence they ought to recite the facts required by 'law; to say only that the requisitions of the law have been 'complied with, is to usurp the judicial function, and to 'give an authoritative opinion, instead of reporting the facts 'to those who have a right to judge, and this, it is said, no 'ministerial officer can do; that a sheriff cannot return that 'he has executed a writ according to law; he must show 'how. 3rd. It is urged that respect for the legislature for- 'bids the supposition, that the act designs to make the Audi- 'tor's certificates evidence of things not officially known to 'him, and of which his office did not contain the best evi- 'dence; that it would be an absurdity in logic and oppres- 'sive in fact; that the proceedings to a sale of land for taxes 'are in the nature of a proceeding at law; they constitute 'a special authority which must be strictly pursued, that any 'defect in any link of the chain is fatal; that assessment for 'taxation is an indispensable pre-requisite; yet it does not 'appear on the Auditor's proceedings that any assessment 'was made; that if there were any assessment at all the 'proof of that fact must appear in Lincoln; that advertise- 'ment for sale is no less necessary, yet there is no lawful 'proof of it; that the statement of the Auditor in his certifi- 'cate of sale, that he advertised according to law is no proof 'of it, he being a mere executive officer and not a proper

'judge of what is, or is not according to law. He says that 'his advertisement is dated the 10th day of April 1832, but, 'does not state that it was ever printed, or if printed, when 'or where or in what paper; that the act of 1825 section 36, 'p. 617 requires advertisement in some newspaper at or near 'est to the seat of government, and that the sale shall be at 'least sixty days after publication and not after the date o1 'the notice, for taxes and the penalty thereon, and not for 'costs as in this instance; that to insure a better publication 'of the advertisement for sale, the act of the 18th of Janua 'ry 1831 section 4, p. 72, in addition to the Auditor's former 'duties required him to transmit to the sheriff of each coun- 'ty three copies of the advertisement which the sheriff was 'to set up in his county; that there is no legal evidence of a 'compliance with this law; that if it should be said that the 'Auditor's certificate is proper proof that he sent the adver 'tisements to the sheriff, it surely is not proof of what he 'did with them; that when the Auditor undertakes to jum 'ble together in one lump, state and county taxes, penalties, 'and costs, he commits an abuse calculated to hide his own 'errors, so as to render detection very difficult, and enable 'him unquestioned to increase his own emoluments by mul 'tiplying tax sales, and to keep the interested in the dark as 'to the facts on which the sales depend; that no law can be 'found to authorise the Auditor to charge costs against the 'owners of lands sold for taxes; that the 20th section of the 'act of 3rd January 1827 requires the Auditor to add 25 'cents as a tax and 12½ cents as an additional tax on all lands 'listed for advertisement after the 20th day of January in 'each year; that it does not appear that this tract is one cf 'that class, and if it were thus subject to "*three bits*" addi· 'tional tax, it is not subject to the Auditor's arbitrary tax 'ation of costs; besides that the two taxes imposed by the 'last reviewed section are unconstitutional, the constitution 'declaring that all property subject to taxation in this state, 'shall be taxed in proportion to its value; that unless Paul 'Chouteau was a non-resident of the county, the Auditor 'had no power to sell the land, whatever might be due upon 'it for state and county taxes; or the Auditor or printer for

CT. TERM
1839.

Morton
vs,
Reeds.

'costs, that the fact of non-residence is not affirmed in the
'all concealing cloak of the Auditor's certificate; he states
'only that the collector sent him a list importing the non-re-
'sidence of Chouteau and that the land was taxed to him;
'that fortunately for the cause of truth and justice there
'was no act of the assembly making the list of the collector
'even prima facie evidence of the facts contained in it.—
'It was moreover contended that the land could not be sold
'before the personal property was exhausted, and that it
'does not appear that there was none; and that the whole
'tract was sold when the law allows only so much to be sold
'as would be sufficient to pay the taxes; that the statutory
'value of land is fixed by the act providing that none shall
'be assessed at less than $1,25 per acre, and it is therefore
'insisted that more should not have been sold, than would
'have been sufficient to pay the taxes at that price. Stead's
'ex'rs vs. Course is relied on. See 4 Cranch 402."

The defendant in the Circuit Court, appellee here, con-
tends that "the Auditor's certificate is evidence prima facie
'that the every act, required previous to the sale, is done;
'but if it should be thought that this last act of setting up
'the advertisements of sale by the sheriff ought to be proved
'by other testimony, that the testimony of Watts the sheriff
'of Lincoln county in 1831 is sufficient to establish that
'fact."

The following are the points, which appear to me mate-
rial to a correct decision of this cause. 1st. Whether the
Auditor possessed officially information that the land in con-
troversy had been assessed, that Paul Chouteau was a non-
resident of Lincoln county, and that the taxes were unpaid,
and whether the act requires that he should be officially in-
formed that there was no personal property of Paul Chou-
teau in Lincoln county.

2nd. What evidence is the Auditor's deed to the purcha-
ser at the sale for taxes?

3rd. Whether the several certificates of the Auditor are
made conformably to law, and if so made, what is their le-
gal effect.

4th. Whether the tax of 37½ cents imposed by the 20th

section of the act of 3rd January 1831 is constitutional, and whether there be evidence that this tract of land is of the class designated by that section of the act.

5th. Whether the legislature intended that so much only of the land should be sold as would be sufficient to pay the taxes at one dollar and twenty-five cents per acre, and that the sale should be void because the whole tract was sold.

6th. Did Laville and Morton acquire any precedence, because Choutcau's deed to them was recorded before that of the Auditor to Suggett was recorded?

1st. The act of 1825 to provide for levying, &c., State and county taxes prescribes the duty of the assessor in office in 1831; and for the taxes of that year the land in controversy was sold. By that act the assessor is required to make out, for the use of the county court, two lists of the taxable property of his county, one of which shall exhibit in alphabetical order, the names of all persons, liable to pay taxes, residing within the county, the other shall exhibit in like order the names of all persons residing without the county who own property within &c. See section 17, p. 569 of the digest of 1825.

The act of 3rd January 1827 directs the several county courts so soon as all appeals shall have been determined, and the assessors lists corrected, to cause their clerk to make out, from the corrected assessment lists, two lists each exhibiting, in alphabetical order, the names of all persons resident of the county liable to pay taxes thereon; also in like order two lists containing the names of all persons not resident of the county, who are liable to pay taxes therein, with the enumeration, description and valuation therein contained, and assessments thereon for State and county purposes, the former to be called the resident tax list, the latter the non-resident tax list, which lists shall be verified by the clerk under his seal of office, one of which shall be delivered to the collector of the county &c., and the other shall remain in the office of such clerk, and at the same time the clerk is required to certify to the Auditor of Public Accounts the amount of the per centum which the county court has ordered to be assessed on the amount of State taxes for the use of the

OCT. TERM
1839.

Morton
v.
Reeds.

county, together with a list of all the real property subject to taxation, and a complete aggregate statement of the whole list with the collector's receipt thereto, &c. See sec. 6 of the above act p. 48.

The same act of 1825 above mentioned makes it the duty of the collector of each county, on or before the first Monday in December in each year, to deliver to the Auditor of Public Accounts a complete list of the names of all persons residing out of his county liable to pay taxes therein with a description, valuation and assessment of the property taxed, and of the the amount of State and county taxes due thereon, and remaining unpaid, and this list to be verified by oath or affirmation. See 32nd section of the act p. 676.

Thus we find that the Auditor has before him, officially, the best information that Paul Chouteau was in 1831 a non-resident of Lincoln county, that his property was assessed, and that on the first Monday in December 1831 his taxes were unpaid., For unless property had been assessed the collector could not have reported his taxes unpaid, and that he was a non-resident. In pursuance of a duty expressly enjoined on him by an act of the General Assembly of the State of Missouri the clerk of the county court of Lincoln county made out from the lists of the assessor corrected by the court of appeals, two lists of taxable property, one of which was given to the collector by which he was informed that this land was assessed to Paul Chouteau a non-resident; the collector again in pursuance of a duty expressly enjoined on him by law, delivers to the Auditor his list, showing that this Paul Chouteau is still a non-resident, and that his taxes are unpaid. Had the defendant produced in evidence the corrected list deposited in the office of the clerk of the county court, it would have been evidence of assessment because it was made out by an officer in pursuance of a duty expressly enjoined on him by law; but the collector being furnished with a list of equal authority, delivers his list to the Auditor, not under the obligation of the official oath only, but also under the obligation of a special oath "where an officer," says Judge McClean delivering the opinion of the Supreme Court of the United States in

this same case of Ronkendorf vs. Taylor's lessee, "does an
act in pursuance of a duty expressly enjoined on him by law,
this not only makes that act evidence, but the best evidence."
See the case 4th Peters 360.

As that case was so much relied on by the counsel for the
appellant, I will advert to it more particularly than he has.
The action was brought by Taylors lessee against Ronken-
dorf who claimed under a collector's sale and deed.   The
collector in that case was furnished with what they called a
tax book made out by an officer, called a register, from the
original assessment lists corrected by a court of appeals.—
The register there acted under the authority of the corpo-
ration, as the clerk here acted under the authority of the
county court.   On the trial of the cause Ronkendorf offer-
ed in evidence, to prove the assessment, by the tax book of
the collector.   The counsel there, bolder than the counsel
here, contended not only that the tax book was no evidence,
but they also contended that it ought to· be shown that the
assessor was regularly and lawfully appointed, and that the
original assessment lists ought to be produced to show that
the property had been assessed.   Those two points were
considered together by the Judge, and previously to over-
ruling them he declared the rule which the appellants coun-
sel relies on so much that he connects it, in his quotation,
with our bill of rights.   In considering those two points
Judge McClean says.   "But it was contended that the orig-
'inal lists of the assessment must be produced and also proof
'of the appointment of the assessors.   The court recognize
'the principle contended for by the counsel for the plaintiffs
'in error, that in an ex parte proceeding of this kind, under
'a special authority great strictness is required.   To divest
'an individual of his property against his consent, every sub-
'stantial requisite of the law must be shown to have been
'complied with.   No presumption can be raised in behalf of
'a collector, who sells real estate for taxes, to cover any rad-
'ical defect in his proceedings, and the proof of regularity
'in the proceedure devolves upon the person who claims un-
'der the collector's sale."   Recognizing then the principle
the Judge proceeds to deliver the opinion of the court by

OCTOBER TERM which both the points were over-ruled, the court deciding
1839. that the corporation existing under the authority of a pub-
lic law, of which all were bound to take notice, and the as-

Morton sessors acting under the authority of that corporation, that
vs was the best evidence of their appointment, and that the as-
Reeds. sessor's list, till corrected by the court of appeals, would not
have been evidence, but that the tax book was the only and
best evidence, because made out by an officer in pursuance
of a duty expressly enjoined on him by law.  For the same
reason the complete list of our non-resident land holders,
delivered on or before the first Monday in December 1831
to the Auditor was evidence, and the best evidence that could
have been given to him of the assessment of the of the land,
of the non-residence of Chouteau, and of the non-payment
of the taxes; for he might have paid them to the collector
himself at any time before the delivery of the collectors list
to the Auditor, or he might since the assessment become a
resident.  But it was contended that, by the act of 1825 so
often before cited, the collector is bound to exhaust person-
al property, and that it must appear to the Auditor that
there are no goods before he can sell, and that such proof
ought to have been made before the circuit court.  The
27th section of that act, which is here relied on by the coun-
sel for the appellant, has reference to the taxes of those in-
dividuals only who reside in the county.  By it the collector
is directed to apply once at the dwelling house, and if the
taxes are not then paid, or within ten days thereafter, he
shall proceed to collect by distress and sale of goods; and
by the 29th section he is directed to sell the lands where no
goods can be found.

In contemplation of law all taxable personal property, ly-
ing and being within a county has an owner in that county
for the purpose of paying taxes.  The 4th section of the act
of 1825, to provide for levying, &c. State and county taxes,
requires the assessor to proceed through every part of his
county, and to require all persons owning, possessing, or
having the care, or management of property, taxable by law
lying and being in the county to deliver to him written
lists of the same, and by that section it is made their duty

Morton
vs
Reeds,

to deliver a list of all they so had on the first day of January of that year. Possession is the most common and notorious index of the ownership of personal property. It would have been very hard for the law to require the collector of Lincoln county to know that Paul Chouteau owned personal property in that county, and to be able to distinguish that property from the personal property of another man, when the said Chouteau, for any thing appearing in this record, might have been residing among the Osage Indians, in St. Louis, or in the City of New Orleans. He might have paid his taxes to the collector under the provisions of the 32 section of the act of 1825, or to the State treasurer under those of the 33rd section of the same act. If he had paid to the collector, his representative the appellant might have proved it by the receipt; if to the State treasurer, the Auditor's quietus might have been produced. The Auditor then knew officially by the collector's return that the land of Paul Chouteau had been assessed in 1831; and also by the same return he knew officially that Paul Choateau was non-resident of Lincoln county and that his taxes for that year were unpaid; and finally Paul Chouteau, being thus known to be non-resident of Lincoln county, could not in legal contemplation be the owner of any personal property in that county, and if he were such owner, the statute nowhere insinuates that the collector is to look out for the personal property of a non-resident to levy on to raise money to pay taxes due on his land.

2nd. The next inquiry is, what evidence of title is the deed made by the Auditor to the purchaser of the land at the sale for taxes. To use again the language of Judge M'Clean in the same case of Ronkendorf vs. Taylor's lessee. The sale of this land was made by the Auditor and the deed executed to the purchaser by this officer "in pursuance of a duty expressly enjoined on him by law." This officer too is a person deriving no emolument from the money produced by the sales of the lands of non-residents; all his acts are matters of record, and they too are performed at the seat of government on due notice given at a time too when it is expected that numbers will be present from every sec-

Tompkins Judge dissenting; Holding that the Auditor knew officially, by the collectors return, that the land in controversy had been assessed in 1831—that appellants grantor was a non-resident of Lincoln county—that his taxes for that year are unpaid, & that being thus known to be a non-resident of Lincoln co., he could not in legal contemplation, be the owner of any personal property in that county, and if he were such owner the statute no where intimates, that the collector is to seek for

OCTOBER TERM
      1839.

      Morton
        vs;
      Reeds.

the personal
property of a
non-resident
to levy on in
order to pay
taxes due on
his land.

tion of the State to attend the sales. This makes the deed evidence. The common law adopted by our statute presumes that every officer performs his duty until the contrary be proved; and the benefit of this presumption shall extend not to the officer only, but to all those who derive their claim to property through his official acts. I he chief justice of the court of appeals of the State of Kentucky delivering the opinion of that court in the case of Hickman vs. Boffman, says: "It is a principle of law well settled, that 'every officer acting under the sanction of an oath, or in 'whom the government reposes a trust, shall be presumed to 'have done his duty till the contrary be proved." This is a principle of the first necessity in society, and indispensable to the rights of those who by law are obliged to commit their rights to the management of others. The law reposes a special trust in the officer, and the citizen is obliged to trust him. Precarious and perplexing indeed would be the situation of the citizen if he were obliged to prove that the officer had done his duty; or if the presumption of his having done it were not to be indulged till the contrary be proved. The principle is equally applicable to a proceeding against an officer, and to a proceeding against the right of an individual derived through the acts of that officer. It was the duty of the officer intrusted by the government, not issue a grant in this case without the warrant having been lodged with the plat and certificate. He having issued the grant, we must presume that he had the warrant to authorise the grant till the contrary be proved. See the case in Hardins reports page 348. In this case the register who had issued the grant for the land, had no recollection that the warrant had been previously lodged with him, and had certified that he had not discovered, from an examination of the survey, that the warrant had accompanied it.

Here is a palpable defect of a warrant, by the authority of which the defendant Hickman claimed the right to survey 2200 acres of land, and to demand from the state a patent for the same; the plaintiff in the inferior court claims by right of pre-emption, a right good in itself; but the title of Hickman was the elder of the two, and the court of ap-

peals decided that his title was good notwithstanding it did
not appear that a warrant was filed with the register; for
that officer having issued the grant, they would presume
that a warrant had been deposited to authorise the issue.—
But in the case now under the consideration of this court,
no defect in any proceeding from the assessor to the Audi-
tor has been attempted to be shown. For much better
reason then it ought to be presumed that the Auditor has
done. his duty, and consequently that the deed made by him
to the purchaser is valid,

In assuming that the Auditor's deed to Suggett, is prima
facie good evidence of title in his alienee, I feel myself sus-
tained not only by that general rule of law so well illustra-
ted in the two cases last above cited, v'z: Hickman vs. Boff-
man and Ronkendorf vs. Taylor's lessee, but also. by a de-
cision of the court of appeals of the State of Kentucky,
which is directly in point. That case is Allen vs. Robinson
3 Bibb 326. The action was ejectment brought by Robin-
son vs. Allen &c. for land which Allen claimed under a sale
and conveyance made by the register of the land office for
the non-payment of taxes. In the course of the trial Rob-
inson offered evidence to avoid the register's deed which
the inferior court rejected. Allen took the case up on some
point decided against him. The court of appeals reversed
the decision on the point made by Allen; and the whole of
the evidence in the case being made a part of the record,,
they say, "But as a new trial must be awarded, it becomes
'necessary to decide whether or not the circuit court deci-
'ded correctly in rejecting the evidence of William Hunter,,
'which was offered by the plaintiff in that court."

"The sale and conveyance of the register when legally
'made pass to the purchaser the legal title; and, in a con-
'test involving the validity of such sale, the register's deed
'(as he is an officer presumed to have done his duty) should
'be taken as prima facie evidence of. the requisitions of the
'law having been fulfilled. But as the register derives his
'authority to sell land for the non-payment of taxes from the;
'law, to make his deed effectual to pass the title, that author-
'ity must be strictly pursued, and although the deed will pri-

'ma facie prove the correct exercise of the authority, it may 'be repelled by making proof that the law was not regular-'ly pursued in making the sale."

"As therefore the plaintiff in the court below could avoid 'the effect of the register's deed by proof of the sale having 'been illegally made, it results that the evidence offered by 'him in that court, but which was rejected, if it tended to 'prove such illegality, ought to have been admitted. That 'the evidence tended to such proof we think evident. The 'law requires that the register should advertise the time and 'place of sale for three months, twice in each month succes-'sively, in the gazette of the public printer. The obvious 'meaning of this provision of the statute requires, that the time and place of sale should be advertised at least three 'months before the sale. The evidence which was rejected should have been received, as it tended to prove that the register did not advertise the time of sale for three months 'as the law requires."

From other parts of this case it appears that the Auditor sends to the register of the land office a book containing a list of the lands of non-residents the taxes on which are unpaid with the amount of taxes &c. The register then does not see the return either of the assessor, or of the collector, and yet the the court of appeals of that state presumes 1st. that the assessor has done his duty correctly, 2nd. that the collector has done his duty correctly, 3rd. that the Auditor has sent to the register a book containing a correct list of the lands of non-residents, on which the taxes are unpaid; and consequently that this register is officially informed that those lands were assessed, that the taxes were unpaid, and that the owners were non-residents. Thus informed the register sells the land and makes the deed; and the courts of that state decide that this deed of the register conveys to the purchaser a title prima facie good and valid, and that the presumption of this validity shall avail the purchaser, until it be proved that some illegality of the proceedings of the register, or of some of the subordinate officers, renders the deed invalid.

The Auditor of the State of Missouri stands one step nea-

 r**er** to the fountain whence this official information flows,
consequently there is one chance less for the commission of
a mistake.  Why then should not the presumption of the
validity of the Auditor's deed be extended to the purchaser
of this land, and also be indulged until the contrary be
shown?   The Supreme Court of the United States has de-
cided, in the two cases of Stead's executors vs. Course, and
Ronkendorf vs. Taylor's lessee, that the purchaser of lands
sold by a collector for taxes, must prove the regularity of
the proceedings of the collector's sale.  But in this case the
land was sold by the Auditor, and not by the collector of
the taxes; as in Kentucky the land was sold by the Register,
and not by the collector.  The collector sells in his county
the lands of the delinquents of that county, the Auditor
sells at the seat of government the lands of the delinquents
of the whole State in the view too of persons collected to-
gether from every part of the State either to pay the taxes
due on their own lands, or to purchase the lands of others.
that may be offered for sale.  He is incited by no interest to
raise the money to pay taxes, he receives no money, it be-
ing all paid to the treasurer.  Moreover all his acts are of
record.  The case of Stead's ex'rs vs Course in reality is
nothing more than the decision of a Georgia Court on their
own statute; for in deciding cases arising under the statutes
of a State legislature the Supreme Court of the United
States always make the decisions of the respective State
courts; the rule of their own decision.  The case of Ron-
kendorf vs. Taylor's lessee originated under an act of Con-
gress, and the Supreme Court of the United States were in
this case unshackled by the decisions of any State court.  But
that sale as before observed was made by a collector of tax-
es, and this by the Auditor of Public Accounts.  Should
this difference in the two cases, be considered not a sufficient
reason for a difference in the rule of evidence which should
govern in the two cases; then I would say that the Su-
preme Court of the United States in deciding that the pur-
chaser of land at the sale of a collector of taxes *"must prove
the regularity of the procedure"* have decided inconsistently
with their own rule declared in the same case.  For the

OCTOBER TERM
1839

Morton
vs,
R eds,

collector making sale of the lot to raise money to pay taxes for the use of the corporation, was actually an officer acting in pursuance of a duty expressly enjoined on him by law with the register, who made out the tax books from the assessor's lists corrected by the court of appeals, or with the assessor who returned the lists from which the register under the correction of the court of appeals made out his tax book, and for that reason he was equally entitled to the credit and presumption of having done his duty until the contrary be proved. It would be a base and unprincipled act in a government to cause the land either of a resident or of a non-resident to be sold for taxes on evidence insufficient to raise the presumption that the owner was delinquent. It would be not less unprincipled in that government after receiving the money of the purchaser to tell him that the evidence, which, before the sale, had raised the presumption that the owner of the land had been delinquent should not be held by its courts to be sufficient to continue that presumption in his behalf until the person, whose lands had been sold, proved the contrary. And whether this rule be made by the legislature expressly or by implication it is equally unprincipled. Courts ought therefore in my opinion to lean against such a construction of the acts of their legislatures. But the reason given by the Supreme Court of the United States for that decision is also insufficient, or rather no reason is given. That court says, "to divest an in‹dividual of his property against his consent every requisite 'of the law must be complied with," &c. In all communities, and especially in these United States every person assents either expressly or impliedly to the laws in force, and consequently, each member of the community consents, that if he fail to pay his taxes, his property may be sold to raise the money in such manner as the law has, or may prescribe; and nobody ever contended, at least in this state, that by the Auditor's sale and deed the non-resident was divested of his property. The only question was whether he, whose land had been sold by the Auditor, should not be held to prove that injustice had been done him in some part of the proceedings preparatory to the sale, or in the sale itself.

But the powers of the Auditor of Public Accounts of this
State, equally with those of the corporation of the City of
Washington are all conferred by a public law. He is an of-
ficer too of much more relative importance to the State of
Missouri, and to her courts than the corporation of the City
of Washington is to the United States, and to their courts.
The same observation may be made with regard to the rev-
enue officers of the State of Kentucky, and the laws under
which they act. The courts of that State then, having a
less extensive jurisdiction than those of the United States,
may without any manner of disrespect to the Supreme
Court of the United States, be presumed to make much bet-
ter decisions on their own revenue laws to them so vitally
important, than that court would on on the acts of Congress
made for the regulation of the fiscal concerns of the corpo-
ration of the City of Washington. But the Kentucky
courts have decided that the deed of their register conveys
to the purchaser of lands, sold by him for taxes, a title prima
facie valid, and for as good a reason the deed of our Auditor
ought to convey to the purchaser of lands, sold by him for
taxes a title prima fac'e valid. We are in the same
case of Ronkendorf vs. Taylor's lessee told that because the
powers of the corporation are conferred by a public law,
therefore their acts prove themselves, and that the assessors
acting under the authority of that corporation are presumed
to be duly appointed. Then because our Auditor's pow-
ers are equally conferred by a public law, his acts also prove
themselves, and his deed must be presumed to be valid, till
the contrary be proved. In concluding then that the deed
of the Auditor conveys to Suggett, the purchaser of the land,
a title prima facie valid, I conceive that I am sustained not
only by the two cases cited from the Kentucky books, but
also by the case of Ronkendorf vs. Taylor's lessee, or at
least by the rule of decision declared by that court in deci-
ding the two first points in that case.

3rd. Are the several certificates of the Auditor given in
evidence made conformably to law, and if so made, what is
their legal effect?

The first certificate in order of time is the certificate of

G

OCT. TERM
1839.

Morton
vs.
Reeds.

purchase made by the Auditor to Suggett. Among many other things the Auditor certifies that the collector of Lincoln county did deliver to him according to law a list of lands of non-residents on which the taxes were unpaid.— By the 28th section of the revenue act of 1825 p. 674 the collector is directed to give to the purchaser of a tract of land, lot or any part thereof a certificate of such sale and by the 36th section of the same act it is made the duty of the Auditor and treasurer (Auditor alone now) to give the same kind of certificate, and the 11th section of the act of the 3rd January 1827 requires that this certificate shall always refer to the advertisement of record in the county. If then the Auditor did insert in his certificate "that the collector of 'Lincoln county did deliver to him according to law a list of 'lands, &c." it was done at the expense of his own labor, and his gratuitous insertions are not to be allowed either to injure the purchaser, or aid the delinquent non-resident.

There are two other certificates both of which are set out in the same instrument of writing, and they are both copied into the statement of the case, they are both made under the 11th section of the act above cited. which is in these words, "Be it &c. that upon all sales of real estate for taxes due thereon, made by the Auditor of Public Accounts and Treasurer, it shall be the duty of the Auditor and Treasurer to transmit to the recorder of the county wherein the land is situated, a copy of the advertisement of sale certified to be a true copy ; and a further certificate that the provisions of the law in such cases made and provided have been complied with, which copy of the advertisement so certified, and further certificate shall be, by the recorder, recorded in the record of deeds, and a copy of such record shall be prima facie evidence of the facts contained in such certificates, whenever a sale under such advertisement shall come in question; and the certificate of sale to be given to the purchaser in such cases shall always refer to the record under which such sale was made.

The objection to these certificates is that they do not pursue the law ; that they ought to state facts, that the act does not make the certificates, evidence of opinion, and inferences

and matters of law, but only prima facie evidence of the facts contained in such certificates, that no ministerial officer can give his opinion on the law of the case, that a sheriff cannot return that he has served a writ according to law.

The first certificate states that the collector did deliver a list according to law, and that the Auditor did by advertisement dated on the 10th day of April 1832 advertise according to law: these statements with perhaps many others made in the first certificate i. e. the certificate of sale, were not required by the statute, and the gratuitous act of the Auditor as before observed is neither to injure the purchaser nor to aid the delinquent non-resident.

To the certificate of the advertisement no objection is taken.

The further certificate, which the law requires to accompany the advertisement is in the very words of the law, viz: "that the provisions of the law in such cases made and provided have been complied with" and the law declares that a copy of the record shall be prima facie evidence of the facts contained in such certificates. The only facts required by law to be stated are, in the first certificate that Suggett was the purchaser, in the second, that the copy of the advertisement sent to the recorder is a true copy, and in the third that the provisions of the law in such cases made have been complied with; for unless this be admitted to be a certificate of facts, then there is no certificate, and the only question here is, whether that part of the 11th section of 1827, which relates to the further certificate of the Auditor, be a dead letter, a nullity in law. And certainly if we are, in construing this section of the act, to restrict the meaning of the word *facts* to the sense in which it is technically used in a bill of exceptions as contradistinguished from conclusions of law, that part of the section will be a nullity. For the Auditor to state that the land had been assessed would have been superfluous and idle, for without assessment the collector could have had no list to inform him either of the taxes due, or of the non-residence of Paul Chouteau, and consequently he could have made no list of non-residents, whose

taxes were unpaid, to deliver to the Auditor; for the Audi-tor to state at what time, at what place, and in what paper the advertisement of sale was made would have been equally useless, for no court sits to examine his proceedings either to forbid the sales or to annul them, after they have been made for any irregularity that may have occurred. The Auditor of Public Accounts of this State is not a ministerial officer, as has been insinuated, rather than said. He is a high executive officer of the state acting on the reports of the several collectors of the several counties, who themselves are immediately accountable to their respective county courts and to the treasury of the state for money collected, and to him for the list of non-residents whose taxes are unpaid; from their reports he draws his conclusions of law, which enable him to decide when the lands of non-residents are liable to be sold for taxes. And he who is legally qualified to decide when the lands of non-residents may lawfully be sold for taxes, may certainly, by an act of the assembly be authorised to certify that those lands have been lawfully sold. or in the words of the act "that the provisions of the law in 'such cases made and provided have been complied with,' and that certificate, if the law so declare, will be good evidence. "The fairest and most rational method to interpret 'the will of the legislator is by exploring his intention, at 'the time the law was made, by signs the most natural and 'probable, and these are either the words, the context, the 'subject matter, the effects and consequence, or the spirit 'and reason of the law. Words are generally to be under-'stood in their usual and most known signification, not so 'much regarding the propriety of grammar, as their general 'and popular use." I Bl. Com. p. 59. It has already been shown that it would have been useless to require the Auditor to state, in his certificates, the facts relating to the preparatory steps for the sale, for those facts were already accessible to those interested, and no court of revision and appeal sat to to revise and correct his decisions. We are bound in decency to suppose that the legislature did mean something when they directed him to certify, and we are equally bound to suppose that this certificate was intended

to be evidence of something. He was directed to certify OCTOBER TERM 1839. "that the provisions of the law in such cases made and pro-"vided had been complied with," he has certified it, and it is Morton vs Reeds. evident that the legislature intended this certificate to raise the presumption that every act preparatory to the sale had been duly performed, and that this presumption should avail the purchaser till the contrary be proved. Any person but one, who had learned a little law, and had improved that stock of learning by some experience in taking bills of exceptions would assent to this proposition, that it is a fact, that the Auditor has, or has not complied with the provisions of the law in making his sales of non-resident's lands. The legislature, in my opinion, never contemplated that the Auditor should state any fact either of assessment, or of non-residence, or of publication. When he certifies in the words of the law, "that the provisions of the law in such 'cases made and provided have been complied with," he has certified all that the law required him to certify; and if we will not allow this certificate of his legal conclusions to be received as evidence, then that provision of the law is nugatory.

My opinion, for the reasons above given, is that the Auditor's certificates are made agreeably to law, and that they ought to be received in the courts as evidence prima facie that every provision of the law preparatory to the sale of the land, and in making that sale had been complied with. But it is urged that this certificate of the Auditor, if it be admitted to be evidence that he sent three copies of the advertisement of sale to the sheriff of Lincoln county, is not evidence that the sheriff set them up at the three most public places of the county, as is required by the 4th section of the act of the 18th of January 1831. When the Auditor's certificate raises the presumption that he transmitted the advertisements, the law itself raises the presumption that they arrived at the place of destination, and that the sheriff did his duty. Without this presumption the Auditor could not have sold; and the same presumption of law, that authorised him to sell, shall according to the authorites above cited, avail the purchaser till the contrary be proved. The books

That the Auditors certificates made under the provisions of the 11th section of the act of January 3rd 1827 were in conformity with the law, and that they should have been received as evidence prima facie that every provision of the law preparatory to the sale of the land, and in making that sale, had been complied with; and that it was sufficient for the auditor to state in his

OCTOBER TERM 1839.

Morton
vs,
Reeds.

certificate in general terms ' that the provisions of the law in such cases made & provided have been complied with."

inform us that it is sufficient notice of a protest in the case both of a foreign and an inland bill of exchange, if the letter be put into the mail, even though it miscarry. But the testimony of the sheriff Watts proved the notices set up, as plainly as the most scrupulous could require. He committed indeed a blunder in stating that they were advertisements of lands sold; but as the law required no such advertisements, we are to presume that they were such as the law did require, especially as he says that he did not notice them particularly. The whole of the objections taken both to the certificates, and to their legal effect, appear to me to be nothing more than verbal criticism, which with equal plausibility might have been much farther extended.

4th. It was contended that the tax of 37½ cents imposed by the 20th section of the act of 3rd January 1827 is unconstitutional, and that there is no evidence that this tract of land was of that class on which that tax was intended to be imposed.

The words of the section are, "It shall be the duty of the Auditor to make out duplicate copies of the non-resident tax lists in the month of January in each and every year; one of which shall be be kept in his office by which to make sales, the other to be for the printer by which to advertise the lands to be sold for taxes, which shall be handed to him by the Auditor; and twenty-five cents shall be added as a tax on each tract advertised to be sold for taxes, and twelve and a half cents as an additional tax on each tract or lot the copies of which are made out by the Auditor for the purposes above mentioned after the 20th day of January in each and every year.

The record of the Auditor's advertisement in the office of the recorder of Lincoln county, shows that this tract of land was one of those subject to the tax of 37½ cents; that advertisement was set out in the bill of exceptions. It is apparent from the letter and spirit of the section above quoted, that this tax of 37½ cents was a tax on the delinquent intended, as the Auditor in his advertisement very correctly states to be an equivalent for the costs or expenses of advertising &c., and although it was no part of

his duty to state the object of the tax, yet it seems to me to

have been entirely useless to lavish so much harsh language against him in a studied written argument, on that account. For by charging the sum as costs in the aggregate along with the taxes and penalty, he most certainly did not "commit an abuse calculated to hide his own errors so as to render detection extremely difficult, and enable him unquestioned to increase his own emoluments by multiplying tax 'sales." The amount of the state and county taxes may at any time be ascertained either at the office of the Auditor, or at that of the clerk of the county court, and a very moderate portion of skill in arithmetic will enable one to calculate the interest, and to add the tax of 37½ cents. He can by no means multiply the tax sales, for they depend, for their number entirely on the collector's return. This tax then of 37½ cents is a tax on the negligence of Chouteau to indemnify the state for costs of advertising his land to be sold for taxes: and it costs as much to advertise a small tract as a large one, as much to advertise a worthless tract as a valuable one. A tax for the support of the government ought to be in proportion to the value of the land; but a tax in the nature of a penalty to indemnify the state for the expenses of advertising the delinquent land to be sold for taxes ought to be in proportion to the costs of advertising.

By the 40th section of the revenue act of 1825 a tax of one dollar is imposed on each person convicted of a criminal offence. No exception was ever taken to this tax because one criminal might be richer than another. The tax of 37½ cents is not in my opinion unconstitutional.

*That the tax of 37½ cents imposed by the 20th sec. of the act of 3rd Jan. 1831 on each tract of land advertised to be sold for taxes, as an equivalent for the expenses of advertising &c. is constitutional.*

5th. Did the legislature intend that no land should be sold for the taxes due thereon at a less price than $1,25 cents per acre; and is this sale void because the whole tract was sold?

The act of 1835, under the provisions of which this tract was sold, directs the Auditor to purchase the land for the state if no person will pay the taxes for the whole tract.— See sections 28 & 36 of that act. But the appellant relies on the case of Stead's ex'rs vs. Course, 4 Cranch 402 in which the Supreme Court of the United States decided that

OCTOBER TERM 1839

Morton vs. Reeds.

the sale was void where the whole tract was sold for taxes by a collector. In that case the whole tract was advertised to be sold for taxes, and other circumstances indicative of fraud were proved. In this case the advertisement was, as the law requires, of the whole tract, or of so much thereof as would be sufficient to pay the taxes, and no circumstance indicative of fraud were proved.

The two cases resemble each other in this only, that in the one case the whole tract was sold for taxes, and in the other the whole tract was sold for taxes. But in the case cited the land was sold for the sum of $552,89 a sum much larger than was probably due, for the amount of taxes did not appear in the evidence; and, in the case under the consideration of this court, the land was sold for no more than the amount of taxes &c. due.

*That it was not the intention of the legislature that no lands should be sold for taxes at a less price than one dollar and twenty-five cents per acre, and the sale of the land in controversy is not void because the whole tract was sold for taxes, it not appearing that any person was willing to pay the taxes for less than the whole tract of land.*

The legislature then did not, in my opinion, intend that no lands should be sold for taxes at a less price than one dollar and twenty-five cents per acre, and the sale is not in my opinion void because the whole tract was sold for taxes it not appearing that any person was willing to pay the taxes for less than the whole tract of land.

6th. Did Laville and Morton acquire any precedence, because Chouteau's deed to them was recorded before that of the Auditor to Suggett was recorded?

The deed of Chouteau to Laville and Morton was executed on the 17th day of August 1831. By the 25th section of the revenue act of 1825 it is provided that there shall be a perpetual lien on all lands sold for taxes &c. This land was sold for the taxes of 1831, and therefore Chouteau conveyed the land to Laville and Morton subject to his lien and consequently it avails them nothing to have recorded a deed which conveys no title against the claim of the purchaser at the sale for taxes.

*That the appellant did not gain any precedence on account of the deed to him for the land in controversy being recorded prior to that of the*

For the reasons above given I am of opinion that the Auditor possessed official information that the land in controversy had been assessed, that Paul Chouteau was a non resident of Lincoln county in the year 1831, and that his taxes for that year were unpaid, and that the law did not require the collector to inform the Auditor whether there

were, or were not personal property of said Chouteau in Lincoln county. It is moreover my opinion that the deed of the Auditor to the purchaser of this land is of itself good prima facie evidence of title in such purchaser, or his alienee; that the several certificates of the Auditor are made conformably to law, and that they are good statutory evidence that all the proceedings, from the assessment of the land to the sale thereof for taxes, were regular; that the legislature did not impose an unconstitutional tax on land when by the 20th section of the act of the 3rd of January 1827 the Auditor was directed to add twenty-five cents as a tax on each tract of land advertised to be sold for taxes, and twelve and a half cents as an additional tax on each tract of land the copies of which are made out by the Auditor for the purposes in that section mentioned, i. e. one for the use of the Auditor to make sales by, and the other for the use of the printer, and that there is evidence on the record of the case that this tract of land is one of the class subject to the tax last above mentioned. I am further of opinion that the legislature did not intend to take land for taxes due from non-resident land holders at the price of one dollar and twenty-five cents per acre in cases where no person would give more, and that the Auditor acted correctly in selling the whole tract for the taxes due, no person offering to pay them for less; that it avails Morton the appellant nothing that Chouteau's deed for the land in controversy to Laville and Morton was recorded before the Auditor's deed to Suggett.

The proofs of the correctness of the Auditor's proceedings being all matters of record, which the law presumes to be in this case good prima facie evidence, and the plaintiff in the circuit court having offered no evidence there to invalidate those proofs, it became, in my opinion, the duty of that court to direct the jury to find for the defendant there, appellee here. That court then, in my opinion, committed no error either in refusing to give the instructions asked by the plaintiff, or in giving those asked by the defendant, and therefore its judgment ought in my opinion to be affirmed.

*Margin notes:* auditor to appellee's grantor, as the 25th sect. of the revenue law of 1825 provides that there shall be a perpetual lien on all lands sold for taxes, &c.

That the proofs of the correctness of the auditor's proceedings being all matters of record—which the law presumes to be, in this case good prima facie evidence—and the plaintiff in the circuit court having offered no evidence to invalidate those proofs, it became the duty of that court to direct the jury to find for the defendant.