Roe & McDowell *vs.* Doe, *ex dem.*, Irwin.

Roe & McDowell *vs.* Doe, *ex. dem.* Irwin.

1. The affidavit of a plaintiff in ejectment, that a certain deed had been in existence, and had been destroyed by fire, as he verily believes, and that it is not in his possession, power or *control*, is a sufficient compliance with the 50th Common Law rule of practice of the Superior Court, to authorize the introduction of a copy.

2. In such an action, the affidavit of a man who, at the time it was made and filed in Court, was one of plaintiff's lessors, from whom a demise was laid, but whose demise was by amendment stricken from the declaration, by reason of his death, may properly be considered by the Court to show the destruction of an orignal paper, preliminary to the introduction of secondary evidence.

3. The fact appearing upon the face of a copy grant, that in one place the grantee's name was written, "*Loyons,*" whilst in other places it was written "*Lyons,*" is not a sufficient objection to its admission as evidence. It should be referred to the jury to determine whether or not it was a clerical error.

4. Proof that a deed had been in existence and had been destroyed, is a sufficient foundation, at Common Law, for the introduction of secondary evidence of its contents.

5. After such foundation laid, the parol evidence of a subscribing witness, stating who was the grantor, who was the grantee, what the subject of conveyance was, the consideration stated, the year wherein the deed was made, and that it was signed, sealed and delivered in presence of witness and another, who subscribed it as witnesses, should be referred to the consideration of the jury as evidence of the contents.

6. Evidence that an original deed was in witness' possession at a time when a trunk, in which, with other papers, it had been kept, was broken open and robbed, since which he has been unable to find it, sufficiently accounts for its absence to authorize the introduction of a copy.

7. Upon evidence, such as that detailed in the 5th Syllabus, it is not error in the Court to charge the jury that if that evidence satisfied them that the grantor named had made a deed as described to the grantee named, they were authorized to find that the title passed from the former to the latter.

8. and 9. If A. and B. being grand-mother and father of C., contribute

to furnish the consideration of the purchase of a tract of land, (A. paying money and B. giving his notes,) for C., an infant, and the deed be executed to C., it will be a good conveyance to him, and.in the absence of fraud, he will hold the land against a subsequent purchase at Sheriff's sale, under a judgment against B. founded on said notes.

10. There being evidence on both sides of a case, to the material points, the verdict will not be set aside, as contrary to the weight of evidence, unless it be strongly and decidedly so.

Ejectment, in Stewart Superior Court.   Tried before Judge PERKINS, at the October Term, 1860.

This was an action of ejectment brought in favor of John Doe, *ex. dem.* William H. Irwin, against Richard Roe, casual ejector, and John McDowell, tenant in possession, for the recovery of lot of land Number 50, in the 22d district, of originally Lee, now Stewart county.

The defendant pleaded the general issue, and the Statute of Limitations.

On the trial of the case in the Court below, the following testimony was adduced on the part of the plaintiff, to-wit:

An affidavit of William H. Irwin, the lessor of the plaintiff, of which the following is a copy:

" GEORGIA, STEWART COUNTY :

" William H. Irwin comes before me, the undersigned, and on oath says, that he is advised, and verily believes, that the original plat and grant, from the State of Georgia, to Elizabeth and Harris Lyons, for lot of land number fifty, in the 22d district of originally Lee county, now Stewart county; and the original deed from the said Elizabeth and Harris Lyons, to Willis Barrington for said lot of land, dated sometime in the Spring or Summer of 1835; also the original deed from the said Willis Barrington to Richard Mathias, for said lot of land, dated in August or September, 1835, were all once in existence, in the possession of the said Richard Mathias, in his house, when said house was burned in the town of Roanoke, in the year 1836, and that he is advised, and verily believes, that said original plat and grant, and said original deeds, were then and there destroyed by fire in the house of the said Richard Mathias, in the said town of

Roanoke, and that neither the said plat and grant, or either of said deeds, are in the possession, power or control of this deponent."

This affidavit was duly signed, sworn to and attested.

An original affidavit made by the said Richard Mathias, who was, at the time it was made, one of the lessors of the plaintiff, but who had subsequently died, and his name stricken from the record by amendment made under an order of Court, of which affidavit the following is a copy, to-wit:

" GEORGIA, STEWART COUNTY :

" Before me, William J. McRea, a Justice of the Peace in and for said county, personally came Richard Mathias, who on oath says, that the orignal plat and grant from the State of Georgia, to Elizabeth and Harris Lyons, for lot of land number fifty, in the 22d district of originally Lee, now Stewart county; also, an original deed from the said Elizabeth and Harris, to Willis Barrington for said lot of land, dated sometime in the Spring or Summer of 1835 ; also an original deed from the said Willis Barrington to this deponent for said lot of land, dated in the month of August or September, in the year 1835, were once in existence, and in defendant's possession at the time his house was burned with the town of Roanoke, in the year 1836, and that none of said papers are in the possession, power or control of this deponent, all of them having been destroyed by fire at the time of the burning aforesaid."

This affidavit was duly signed, sworn to, and filed in the Clerk's office at the time it was made.

Upon this accounting for the absence and non-production of the original papers, the plaintiff read in evidence :

A copy plat and grant from the State of Georgia, in which the premises in dispute are given and granted to Elizabeth and Harris Lyons, illegitimates of Gray's district, Henry county; but in the *habendum et tenendum* their names are written Elizabeth and Harris Loyons, and on the plat, opposite the number of the lot, there is a memorandum of:

" drawn by Elizabeth and Harris Lyons, (Ill'g'ts) Morgan's district, Henry county."

HENRY IRWIN and MARY IRWIN testified : That William H. Irwin is their son, and was born on the 22d day of September, 1831; that the land in dispute belongs to the said William H. Irwin, having been conveyed to him by Richard Mathias, by regular deed; that the land was paid for by Arabella Corbitt, the grand-mother of the said William H. Irwin, and the deed was made by Mathias to the said William H. Irwin, by the special directions of the said Arabella Corbitt; that the witness, Henry Irwin, did not pay his money, or any part of his money for said land, nor was he in debt at the time the deed was made ; that the purchase money, $1,000, was paid by Arabella Corbitt in the year 1838; the deed was signed, sealed and delivered, in the presence of Elijah Miller and William Fitzpatrick, J. P., and others ; that the last time the witness saw the deed, it was in the possession of witness, Henry Irwin, and in a trunk of said witness, which was broken open whilst the witness was absent from home, and, as both witnesses verily believe, the deed was stolen or taken away, and the witnesses do not know where it is ; that neither of the witnesses are interested in the event of this suit.

JOHN P. LYONS testified : That some time in the year 1833, Elizabeth Lyons and Harris Lyons, sold the lot of land in dispute, to Willis Barrington, for the sum of $50, and received the money therefor; that the said Elizabeth and Harris, signed, sealed and delivered a deed for said land to the said Willis Barrington, which deed was executed in Henry county, Georgia, and witnessed by the said witness, John P. Lyons, and some one else not now remembered ; that at the date of the deed, Elizabeth was about twenty-nine years old, and Harris was about twenty-seven years old.

JOHN R. ROBINSON testified : That he saw Willis Barrington sign, seal and deliver to Richard Mathias, a deed for the land in dispute sometime in the year 1835, in August or September ; that the consideration money was paid by Mathias to Barrington, and the deed was witnessed by Frederick

Mills, and by witness, who was, at the time, a Justice of the Peace of Stewart county, where the deed was executed, and who signed and witnessed the deed in his official character; the deed was a warranty deed, in the usual form of such deeds, and written by the witness.

Plaintiff then read, in evidence, a certified copy from the records of the Clerk's office of Stewart Superior Court, of a deed from Richard Mathias, to William H. Irwin, recorded the 25th of April, 1839, of which the following is a copy:

"GEORGIA, STEWART COUNTY:

"This indenture, made between William Henry Irwin, of the county and State aforesaid, of the one part, and Richard Mathias, of the same county and State aforesaid, of the other part, witnesseth, that the said Richard Mathias hath, this day, bargained and sold unto the said William Henry Irwin, a certain lot of land, lying and being in the twenty-second district of originally Lee, now Stewart county, known and distinguished in the plan of said district as lot number fifty, for and in consideration of $1,000, to him in hand paid, the receipt whereof is hereby acknowledged, wherefore the said Richard Mathias, his heirs, executors, administrators and assigns, do warrant and defend the right and title to said lot, from the claim of the said Richard Mathias, and his heirs, and executors, administrators and assigns, or any other person whatever, unto the said William Henry Irwin, son of Dr. Henry Irwin, about six years old, his heirs, executors, administrators and assigns, in fee simple forever. In witness whereof, I have hereunto set my hand and seal, this the 4th day of June, 1838.

"Signed, sealed and delivered in the presence of Elijah Miller, C. D. Riden and William Fitzpatrick, J. P.

"RICHARD MATHIAS, [L. S.]
"JOSHUA H. ALSTON."

The usual affidavit of the plaintiff to let in this copy deed was waived by counsel for defendant.

When the affidavit of Mathias; the copy plat and grant;

the testimony of John P. Lyons; the testimony of John R. Robinson; and the copy deed from Mathias to Irwin, were tendered in evidence, they were each and all objected to by counsel for defendant, and the objection overruled.

JOHN MCDOWELL testified: That, as the overseer of Robert Toombs, he was in possession of the land in dispute on the 26th of September, 1854, the day on which this action was commenced; that he had been in possession since 1849; that there were forty acres cleared land on the lot, which was worth the sum of $60 per annum for rent, since the year 1849.

The plaintiff then closed, and counsel for defendant moved a judgment of non-suit, which motion the Court overruled.

The following testimony was then introduced by the defendant:

FREDERICK MILLS testified: That Richard Mathias and Henry Irwin both told the witness that Mathias sold the land in dispute to Henry Irwin for $1,000, $600 of which was paid in cash, and small notes of $30 each given for the balance; that the trade was made in the Spring of 1838, and the notes to be due about Christmas thereafter; that Mathias then made a deed to Henry Irwin for the land; that Henry Irwin went into the possession of the land, and improved it; the notes given by Irwin for the land, were sued to judgment in a Justice's Court of Stewart county, in the name of Harrell Hare, in 1840, or 1841, before William Fitzpatrick, J. P., and the land was levied on and sold as the property of Henry Irwin, under the said *fi. fas.* and others; and that long after he bought the land, Henry Irwin called on witness to write a deed to his son, William Henry Irwin, who was then a boy about ten years old, which witness refused to do, believing that Henry Irwin was trying to defraud his creditors, he being, at the time, embarrassed in his pecuniary circumstances; witness knows nothing of any deed to William Henry Irwin, nor of his grand-mother, Mrs. Corbitt, having paid for the land for him, and from his knowledge of Mrs. Corbitt's circumstances, he knows she did not have the means to pay $1,000 for the land; witness and William Henry

Roe & McDowell *vs.* Doe, *ex dem.,* Irwin.

Irwin are at law about some negroes, and there is a cool feeling between them.

WILLIAM FITZPATRICK testified: That, by request of Henry Irwin and Richard Mathias, he witnessed a deed as Justice of the Peace, from Mathias to William Henry Irwin, in the year 1838, but did not see William Henry Irwin at the time, nor did he see any consideration paid, but understood Henry Irwin to say, that he was to pay Mathias for the land, $400 in cash, and $600 in notes; that William Henry Irwin was a boy about six years old when the deed was made; Harrell Hare placed in my hands, for collection, the notes which I understood were given in part payment for the land by Henry Irwin, and they were sued to judgment, and *fi. fas.* were issued thereon, and the land was sold at sheriff's sale under them and other *fi. fas.*, and bought by E. T. Sheppard; that previous to the said sheriff's sale, Henry Irwin had bargained the land to Edward T. Sheppard for $600, and that the sheriff's sale was had merely to perfect the title in Sheppard, who was assured by Henry Irwin that such a course would secure the title to him ; that the Harrell Hare *fi. fas.* were paid out of the proceeds of the sheriff's sale; that Henry Irwin told witness that he had the deed made to his son William Henry Irwin, to prevent the land from being taken away for his, the said Henry's debts, but that now he had concluded to pay them off, and that if he could get $600 for the land, and $600 more for a negro, that it would pay him out of debt; that Henry Irwin's object seemed to be, to avoid the payment of his just debts from the time witness first knew him, until he fled from the country for stealing a negro; the witness never heard of Mrs. Corbitt, the grand mother of William H. Irwin, buying the land for him.

Counsel for the defendant, after accounting for the absence of the *fi. fas.* recited therein, read in evidence a deed from Robert Rives, sheriff of Stewart county, to Edward T. Sheppard for the land in dispute, reciting a regular sale thereof, as the property of Henry Irwin, under *fi. fas.* from a Justice's Court of Stewart county, in favor of John F. Ball,

William Cooper and Harrell Hare; the sale occurred on the 7th of April, 1840, at the price of $625, and the deed was recorded on the 10th of April, 1840.

The defendant then closed, and the plaintiff, in rebuttal, proved by James L. Corbitt, that his mother, Arabella Corbitt, before she moved to Georgia from North Carolina, had eight or nine negroes, which she divided out amongst her children, except two or three which she brought with her, together with some money for which she sold some property; that she gave the negroes she brought with her to the children of Henry Irwin, of which plaintiff is the oldest; that in 1840, Henry Irwin had some property around him; Mrs. Corbitt moved from North Carolina to this State with Henry Irwin and his wife.

The jury returned a verdict in favor of the plaintiff for the premises in dispute, and $660 for rent.

Counsel for the defendant then moved for a new trial on the following grounds, to-wit:

1. Because the Court erred in admitting the testimony of John R. Robinson, and John P. Lyons, over the objection of defendant's counsel.

2. Because the Court erred in admitting, in evidence, the copy plat and grant to Elizabeth and Harris Lyons.

3. Because the Court erred in admitting the copy deed from Mathias to William H. Irwin.

4. Because the Court erred in admitting, in evidence, the affidavit of Mathias.

5. Because the Court erred in refusing, on motion of defendant's counsel, made after the plaintiff closed his testimony, to withdraw the testimony of Robinson from the consideration of the jury.

6. Because the Court erred in refusing to grant a non-suit against the plaintiff, when counsel for defendant moved the same.

7. Because the Court erred in charging the Jury as follows: That if they believed that the evidence showed that the grantees, Elizabeth and Harris Lyons, made a deed of conveyance to the land in dispute, to Willis Barrington, that

Roe & McDowell *vs.* Doe, *ex dem.*, Irwin.

this put the title out of them, and in Barrington, and so if they believed the evidence showed that Barrington made a deed of conveyance to Mathias, that this put the title in Mathias; and that the loss of these deeds having been accounted for, the Court allowed the evidence of the witnesses, Robinson and Lyons, to go to the jury to establish the above facts, and that it was a question for them to determine from the evidence.

8. Because the Court erred in charging the jury : " That if they believed from the evidence, that Arabella Corbitt bought the land in dispute of Mathias, and paid a part of the purchase money, either four hundred or six hundred dollars, in cash, and Henry Irwin gave his small notes for the balance, and Arabella Corbitt had the deed made to William H. Irwin, her grand-son, that the title vested in William H. Irwin, notwithstanding these notes, or some of them, were sued to judgment, and the land was sold under *fi. fas.* issued from these judgments, and other *fi. fas.* by the sheriff, and Edward T. Sheppard became the purchaser thereof, the plaintiff was entitled to recover.

9. Because the Court erred in refusing to charge the jury when requested by counsel for defendant : That if they believed, from the evidence, that Henry Irwin gave his small notes for four or six hundred dollars, as a part of the purchase money for the land, and that these notes, or some of them, were sued to judgment, and the land was sold under *fi. fas.* issued on the judgments, and other *fi. fas.* by the Sheriff, and E. T. Shepherd became the purchaser, the plaintiff could not recover.   The Court remarking, " that he had charged to the contrary."

10. Because the jury found contrary to evidence, and the weight of evidence.

11. Because the jury found contrary to law, and the charge of the Court.

This motion for a new trial was overruled, and the plaintiff in error seeks a reversal of the judgment by his writ in this case.

Roe & McDowell *vs.* Doe, *ex dem.*, Irwin.

JOHNSON and SLOAN, and B. S. WORRILL, for plaintiff in error.

E. H. BEALL for defendant in error.

*By the Court*—JENKINS, J., delivering the opinion.

The verdict of the Jury in this case being for the plaintiff, the defendant moved for a new trial on the several grounds stated above. The Court below refused the motion, and defendant excepted on each ground so taken.

There seems to have been an unusual fatality attending the title papers in this cause, both parties having been compelled to resort to secondary evidence, and the complainant's chain being made out entirely by evidence of this character, several of the exceptions refer to the insufficiency of this evidence.

And it is objected, first, that no sufficient foundation is laid for its introduction. The showing on this head consists, first, of the affidavit of William H. Irwin, the plaintiff's lessee, and secondly, of that of his grantor, Richard Mathias, who, at the commencement of the action, and when his affidavit was filed, was a party to the record, (a demise having been laid in his name,) but upon his death, pending the action, the declaration was amended by striking his demise.

Irwin swears that he believes, that the original grant, and all of the title deeds from the grantees to his grantor, Richard Mathias, (specifically reciting them,) were once in existence, and were burned when the house of the said Mathias was destroyed by fire, and that none of said originals were then in his possession, power or *control*. Mathias swears positively to the existence of the same papers, and to their destruction by fire—adding, out of abundant caution, they were not then in his possession, power or control.

1. These affidavits come fully up to the 50th Common Law rule of practice, except that the word "*control*" is substituted for the word "*custody*." *In Ratteree vs. Nelson*, 10th Geo., 439, this Court decided that a party had substantially complied with this rule, who swore, after stating his belief of

the loss or destruction of the original, "that it was not in his custody, power or control."

In that case, *control* was substituted for *possession*, in this for *custody*. Therefore, strict literal compliance is not required. A party who swears that a paper is neither in his *possession* nor his *control*, certainly swears substantially that it is not in his *custody*. I cannot conceive of custody in the absence of both possession and control.

2. It is objected that the affidavit of Mathias was improperly received, he not being a party at the time. Having been a party when the affidavit was made and filed, and having been stricken from the record only in consequence of his death, his affidavit was a paper of file in the case, and so comes to us; was intended only as evidence for the Court, not for the jury, and we think was properly considered by the Court.

But apart from this, the affidavit of Irwin was a sufficient foundation for the introduction of secondary evidence.

3. But other objections were raised against the introduction of these papers.

The copy grant is objected to on the ground that, in one place the surname of the grantees is written "*Loyons*," instead of "Lyons," the latter being the name of the grantees, and of the persons who conveyed. This is rather hypercritical for grave consideration. The fact of the name having been written both ways in the grant, shows that in one writing or the other, there was a clerical mistake; and the circumstance, that it was only once written *Loyons* is suggestive, that the mistake occurred just there. It is objected that the Court erred in receiving the evidence of John P. Lyons to prove the execution and contents of the deed from the owners to Barrington, and in receiving the evidence of Robinson to prove the execution and contents of the deed from Barrington to Mathias.

4. First, it is said that the 50th Common Law rule of practice does not govern the case, because plaintiff sought only to give in evidence the contents of the deeds by parol, not copies of them, and that the Common Law rule requiring a showing

4

Roe & McDowell *vs.* Doe, *ex dem.*, Irwin.

as the foundation for such secondary evidence was not complied with.

We think it was. The pre-existence of the deeds was proven, and also their destruction by fire, and all necessary diligence was shown on the part of the plaintiff.

5. It is further objected that the evidence of these witnesses falls short of proving the contents of the deeds in question. They prove who was the grantor, who was the grantee; that the land in dispute was the subject granted; that there was a consideration paid; that the deeds were signed, sealed and delivered in the presence of two witnesses, Lyons and another, having attested one, and Robinson the other, as subscribing witnesses; each witness states the year in which the deed he witnessed, was executed. Robinson states that the deed he witnessed, was in the usual form of warranty deeds.

We know of no rule which determines with precision the degree of fulness with which the contents of a deed shall be stated in such cases. We think all the law requires is a statement of the substantial, material parts of the deed, so that the jury may determine who were the parties, what the subject of conveyance, whether a deed was really signed, sealed, delivered and attested as the law requires, and as nearly as may be, the time of its execution. The evidence of these witnesses we think fulfilled all these requirements, and was properly referred to the jury for their consideration.

6. The copy deed from Mathias to Irwin, taken from the County records, was objected to on the ground that the original was not sufficiently accounted for, and the overruling of the objection was made a ground of motion for a new trial.

We think the testimony of Henry Irwin and Mary Irwin fully accounts for the absence of the original, and that the copy was properly admitted.

7. We detect no error in the charge of the Court, as set forth in the seventh ground of the motion for a new trial. The evidence was very fairly referred to the consideration of the jury, and to say that there was error of law in that charge, would be to hold, that when the destruction of an

original deed for land had been satisfactorily proven, parol proof of its contents by a subscribing witness, is insufficient evidence of a transfer of title.

This we cannot hold. It is not evidence of a conveyance of land by parol. It is parol evidence of a conveyance by deed, the loss or destruction of which has been proven as a preliminary to the introduction of secondary evidence, being the best of which the nature of the case admits.

It is, however, evidence of a conveyance by deed, and if it satisfied the minds of jurors, that such conveyance was made, it is sufficient. This is the effect of the Court's charge.

8. Nor can we perceive error in the charge set forth in the 8th ground. It is in substance this: If A. advance to B. $400 to be paid as a part consideration of the purchase of a tract of land for her grandson C., a child of twelve years, on condition that the title be made to that child, and B. give his promissory note for $600, as the remainder of the consideration, and the title be made by the vendor to the child, who is the son of B., it will vest the title in C., and he will hold the land against a subsequent purchaser at sheriff's sale under a judgment obtained upon said promissory note of B.

The purchaser at sheriff's sale can be in no better condition than the vendor of the land, and payee of the note, upon which the judgment was founded. He could not subject the land to the payment of the note in virtue of the vendor's lien, because, by conveying to C., he undertook and elected to rely upon the credit of B., knowing that the whole consideration did not move from B. This judgment had no higher lien upon the property than any other against B. The condition of the purchaser at sheriff's sale, therefore, is that of a man who buys the property of C., an infant, when sold under execution to satisfy the debt of B. The charge of the Court was, that in such a case, C.'s title is better than that of the purchaser at sheriff's sale, and it was right.

9. The charge refused by the Court, as stated in the 9th ground, was just the opposite of that just considered. If the Court was right in giving the one, as we have held, he was right in refusing the other.

10. The grounds taken that the verdict was contrary to law and to the charge of the Court, and to the evidence, remain to be considered. The Statute of Limitations pleaded by the defendant could not bar plaintiff's recovery under the evidence, because he was under the disability of infancy when the cause of action accrued, and brought his suit within seven years after the removal of the disability. We are unable to perceive that the verdict was contrary in any respect, either to the law or to the charge of the Court.

The case really turns upon the evidence, and the only remaining question is, whether the verdict was contrary to the evidence, or strongly and decidedly against the weight of evidence. The defendant sought to vitiate the plaintiff's title by fraud; not committed by plaintiff, (who was a child of twelve years when the deed to him was executed,) but fraud committed by his father, Henry Irwin, with a view to circumvent creditors, to whose rights he insists the purchaser at sheriff's sale and his assigns are subrogated. There was abundant proof on the part of the plaintiff of the *bona fides* of the transaction, if the jury believed his witnesses. There was also proof enough made by one witness on the part of the defendant, taken *per se*, to establish fraud on the part of Henry Irwin, (plaintiff's father,) who was the acting party in the purchase. But there was a conflict in the testimony adduced by the parties, and there is, moreover, some discrepancy, on a material point, between two of the defendant's witnesses.

There was no impeachment of any witness, for lack of character for truthfulness. It is a case of doubt, eminently one to be referred to the sound discretion of a jury. We cannot say, either that their verdict is without evidence to support it, or that it is strongly and decidedly against the weight of evidence. It ought not to be disturbed. We, therefore, affirm the judgment of the Court below, overruling the motion for a new trial.

Judgment affirmed.