### HOLMES v. DEPPERT.

1. LOST DEED—PROOF OF CONTENTS—WITNESSES—CIRCUMSTANCES AFFECTING CREDIBILITY.
   The fact that a defendant, in attempting to give the substance of a deed claimed to have been drawn by him and subsequently lost, indicated at first an insufficient description, but corrected his testimony, upon being recalled, so as to denote that the property was properly described, is no ground for disturbing a judgment based upon the existence of the deed; the circumstance, if suspicious, being for the jury to consider.

2. SAME.
   In proving the contents of a lost instrument, it is sufficient to prove its substance.

3. SAME—CONCLUSIONS OF WITNESS.
   In proving the contents of a lost deed, witnesses must give the words or the substance of the words; they cannot be asked the "sense" of the deed.

4. REAL PROPERTY—POSSESSION—CONSTRUCTIVE NOTICE.
   Actual possession of land is constructive notice to purchasers of a claim thereto.

Error to Wayne; Frazer, J. Submitted October 26, 1899. Decided December 12, 1899.

Ejectment by Henry G. Holmes against Eva Deppert and others. From a judgment for defendants, plaintiff brings error. Reversed.

*George H. Prentis*, for appellant.

*C. J. O'Flynn*, for appellees.

HOOKER, J. The plaintiff brought ejectment, and appeals from an adverse verdict. The court left two questions to the jury, viz., whether the widow had a life estate in the premises, and whether the land described in the declaration was susceptible of location. The plaintiff claims that a verdict should have been directed in his favor. The declaration describes the land claimed as the undivided one-fifth of that part of the "Lambert-Beaubien Farm," so called,—

"Described as follows, and being all the land and premises between Illinois street on the south and Leland street on the north, and between Beaubien street on the east and the alley about one hundred feet west from the westerly line of Beaubien street, and being designated on the map of the city of Detroit as lots one hundred and three, one hundred and four, one hundred and five, one hundred and six, one hundred and seven, one hundred and eight, and one hundred and nine, and being known and described as lots one hundred and three, one hundred and four, one hundred and five, one hundred and six, one hundred and seven, one hundred and eight, and one hundred and nine of Miller and Wilcox's subdivision of outlots one hundred and eighty, one hundred and eighty-two, and one hundred and eighty-four of the 'Lambert-Beaubien Farm,' so called, or as lots one hundred and three, one hundred and four, one hundred and five, one hundred and six, one hundred and seven, one hundred and eight, and one hundred and nine of Miller and Wilcox's subdivision of outlots one hundred and eighty-two and one hundred and eighty-four of the Lambert-Beaubien farm."

Plaintiff introduced a deed from Eben Wilcox and wife and Alexander Adams to John Deppert, dated July 21, 1868, conveying lots 103, 104, 105, 106, 107, 108, and 109 of the Miller and Wilcox subdivision of outlots 180 and 182

of the Lambert-Beaubien farm, according to the recorded plat, being on the westerly side of Beaubien, between Illinois and Seward streets; also a deed from Daniel Hand to John Deppert, dated September 18, 1875, conveying lots 103, 104, 105, 106, 107, 108, and 109 of Miller and Wilcox's subdivision of outlot numbered 184 of the Lambert-Beaubien farm. It was admitted that John Deppert was the owner of the premises described in the foregoing deeds at the time of his death, and that he was the husband of Eva Deppert, and the father of the other defendants. A plat was introduced, showing the division of the farm into outlots, including 180, 182, and 184. A deed was introduced from the sheriff of Wayne county to the plaintiff, dated November 7, 1894, conveying John J. Deppert's interest in lots 103, 104, 105, 106, 107, 108, and 109 of Miller and Wilcox's subdivision of outlots 180, 182, and 184 of the Lambert-Beaubien farm, according to the recorded plat thereof. The plaintiff also showed that the defendants were in possession of the premises described in the declaration, and this was not disputed. The defendants called several witnesses to prove that the children united in a deed to their mother of all of this property left by John Deppert, consisting of seven lots, and that she had been in possession of them thereafter. Counsel for the defendants also introduced two plats showing Beaubien, Illinois, and Seward streets, among others. According to one of them, the lots between Illinois and Seward streets were numbered from 108 to 114, inclusive; according to the other, from 103 to 109, inclusive. These plats contain nothing to show what plats they are, but, assuming them to relate to the same locality, another plat, offered by the plaintiff, indicates that the land between Seward and Illinois streets is upon what was platted as outlot 184. Further light was thrown upon the subject of the location of the premises by the testimony of Campau, a surveyor, which showed that the numbering of some of the lots had been changed by the later plat. He also testified that Leland and Seward streets were identical. As all of the

testimony was returned, and the foregoing is all there was of it, we have no difficulty in finding that the declaration sufficiently describes the land which the evidence shows that John Deppert owned, and which these defendants occupy, and the court might safely have told the jury so; and, inasmuch as counsel requested that the jury be instructed that the plaintiff should recover unless a conveyance was made to the widow, we think the jury should not have been allowed to consider the question of description.

Another important question relates to the alleged deed to the widow. If it is true that the heirs united in a valid deed to the widow, it is manifest that the plaintiff should not have recovered, because not entitled to the possession. The alleged deed was not produced, and there was testimony that it was lost. This authorized the reception of proof of its contents; and, after stating the circumstances under which it was said to have been made, several witnesses attempted to give the substance of its contents. It is claimed on the part of the plaintiff that some of this evidence was inadmissible, and that in the aggregate it fell short of proving a valid conveyance. John J. Deppert testified that the deed was agreed upon, and he was to prepare it, which he did, and that all signed it, and it was delivered to the widow. On cross-examination he said it was not witnessed, nor was it acknowledged. On being recalled, he said that he could not give the contents word for word, but that he "kind of copied an old deed,—followed that up a little bit." The testimony proceeds as follows:

"*Q.* What was the language?

"*A.* 'This indenture,' made such and such a date. 'We hereby sell, assign, and dispose to Mrs. Eva Deppert, our mother, this property in dispute on Beaubien street, for one dollar and other considerations, for as long as she lives.' There is about the substance of the words; pretty close to it; I can't say exactly."

And the witness, being again recalled, February 8th,

was asked on cross-examination to write, as near as he could, a copy of the paper, and he thereupon wrote the following in open court, which is marked "Exhibit A," having left the stand for such purpose:

"This is to certify that we, the undersigned, hereby sell and assign to our mother, Mrs. Eva Deppert, all our right, title, interest in and to all of our father's estate, John Deppert, deceased; said property being situated on the west side of Beaubien street, between Leland and Illinois streets. [Seal.]" (Signed.)

On cross-examination Catherine Deppert said:

"It said that the property was— As long as my mother lived, she had the right of that property. She had the use of it as long as she lived. We all left it to her; all the children."

And, on re-examination of the witness, counsel for defendants asked the following questions:

"*Q.* You don't pretend to say that those were the exact words?

"*A.* No, sir.

"*Q.* That was simply the sense of it?

"*A.* That is the sense of it."

And counsel for plaintiff asked that the question and answer be stricken out, as he objected to the witness giving the sense of it, instead of the language; which motion was overruled by the court, and plaintiff duly excepted.

Christopher Deppert said:

"My brother John had a deed made out there, settling the right to my mother as long as she lived; and they all signed their names, and I signed my name, and my brother gave the paper to my mother, and my mother gave it to my sister Kate, and she put it in a box, and that was the last I heard of it."

On cross-examination he said that:

"My brother read the paper to us, and it read so as to give my mother the right of everything. I cannot state exactly the words. It read to the effect that everything was owned by my mother; that we were giving her the

legal right of everything as long as she lived, or something like that. I cannot give the exact language; I cannot say any more than I have said."

Elizabeth Blesser said:

"We thought it was no more than right that mother should have it as long as she lived, and my brother wrote out a paper, and we all signed it, to give mother the right of all the property—everything—as long as she lived; and, after we had all signed it, John gave it to mother, and mother gave it to my sister Kitty, and she put it away. I have never seen the paper since that."

On cross-examination she said she could not give the words, it was so long ago.

Mrs. Eva Deppert said:

"The paper said that everything belongs to mother as long as she is alive. After the paper was signed, John handed it to me, and I gave it to my daughter Kitty, who locked it up in a box, and I have not seen it since."

On cross-examination the witness said she could read English; that John read the paper to her, and that then she read it over before it was put away; that the paper said, "All what my husband and me was working—what we had—belonged to me as long as I am alive."

The testimony of John J. Deppert was sufficient to raise a question for the jury, so far as the proof of contents of the writing is concerned. It contained words of conveyance, and it sufficiently described the land, the parties, and the estate. Much of the testimony in relation to this subject fell short of proving the contents of a valid deed. The testimony first given by Deppert was not sufficient in the matter of description, but he subsequently made it so. This is claimed to be a suspicious circumstance, but, if so, the question was for the jury. In proving the contents of lost instruments, it is sufficient to prove the substance of the contents. It is not competent for the witness to give a conclusion as to the effect of the deed. He cannot be asked the sense of the deed. He should give the words or the substance of the words. The sense of the

words would be the substance, and this was what the witness attempted to give. The question is near the line, and we think that a trial court may properly be strict in confining testimony to the substance of contents, and preventing the introduction of conclusions.

There is no force in the claim that the plaintiff was a *bona fide* purchaser without notice, as the possession of Mrs. Deppert was constructive notice.

Some other questions are raised, but we think it unnecessary to discuss them.

The judgment is reversed, and a new trial ordered.

The other Justices concurred.