## KRIES, Respondent, v. HOLLADAY-KLOTZ LAND & LUMBER COMPANY, Appellant.

St. Louis Court of Appeals, December 11, 1906.

1. **EVIDENCE: Tax Sale: Recitals in Deed.** The general doctrine is that a tax deed must contain recitals to show the sheriff had authority to sell.

2. ——: ——: **Presumption.** The rule that all official acts are presumed to have been rightly and regularly done does not, as a general rule, apply to sales of land for taxes, and one who asserts the validity of a tax sale has the burden of showing that all steps necessary to a good and valid sale were taken.

3. ——: ——: ——. This rule obtains in this State notwithstanding under the present law a sale is made only after judgment in an action instituted and conducted in the regular way. It is based upon the common law rule which required that one claiming title to property of another under a proceeding based upon neglect of a public duty, must show that

the public duty had been neglected and that the attempted transfer of title by judicial process was regular.

4. ———: ———: **Trespass: Presumption.** The rule that the burden is on one asserting title to land through a tax sale to show that the proceedings leading up to the tax sale were regular, does not apply in an action between such person and a mere trespasser; in such case the presumption obtains, when a tax deed is introduced, that the official acts necessary to make the sale valid were performed.

5. ———: ———: ———: ———: **Constructive Possession.** One claiming title under such tax sale has constructive possession so as to maintain an action for trespass against one having no color or claim of right who enters and cuts timber on the land.

6. ———: ———: **Secondary Evidence.** When a tax deed and the records of the same are shown to have been destroyed by fire, secondary evidence of their contents is admissible.

7. ———: ———: ———: **Abstracts of Title.** In order that secondary evidence may be admitted to show the contents of a lost instrument the material parts of the instrument must be proved in substance; where the deed records were destroyed by fire and an abstractor identified an abstract made by him, which abstract was a true and correct abstract of the record, and showed the book and page of the record of a deed, date of its execution, acknowledgment, filing and recording, that it was a tax deed executed by the sheriff, the consideration paid, and descriptions of the land, this was sufficient showing of the essential parts of the deed to make it admissible as secondary evidence.

Appeal from St. Louis City Circuit Court.—*Hon. Wm. H. Kinsey,* Judge.

AFFIRMED.

*Gamble, Petherbridge & Taylor* for appellant.

This is an action of trespass for the cutting of timber and before such an action can be maintained, a plaintiff must show either that he had actual possession of the land at the time of the trespass (in which event he need not show actual title in himself), or if the land be in the actual possession of no one then he must show that he had actual title to the land, which combination of nonactual possession by anyone and actual title in plaintiff

makes out what the courts term constructive possession, which sort of possession is sufficient to maintain trespass. Brown v. Hetzell, 87 Mo. 564; Land & Lumber Co. v. Markam, 96 Mo. App. 51; Yankee v. Thompson, 51 Mo. 234; Gregg v. Jesberg, 113 Mo. 34; Atkinson v. Improvement Company, 125 Mo. 565.

*Daniel Dillon* and *O. L. Munger* for respondent.

(1) There could be no controversy under the evidence, that the abstract of title made by Mr. McGhee from the records before they were destroyed, and read in evidence by plaintiff at the trial, was the best evidence attainable. The first statute which required it went into effect March 25, 1870 (see Laws of 1870, par. 111). It has ever since been in the General Statutes, and is now section 9067, R. S. 1899. The Supreme Court have expressly decided that this index and abstract book is competent evidence when the records have been destroyed. Smith v. Lindsay, 89 Mo. 80. Greenleaf in his work on evidence (16th Ed.), vol. 1, p. 698, sec. 563q, in speaking of the different kinds of secondary evidence, mentions abstracts of deeds as a high character of secondary evidence. (2) There are many decisions holding that a tax deed under our statutes makes a *prima facie* case of title in the grantee named in the deed. We cite only two of the later cases. Cummings v. Brown, 181 Mo. 715; Stevenson v. Black, 168 Mo. 558. (3) After lapse of time, and especially after records and papers have been destroyed, the law presumes that all things were done regularly and in the usual course, and as required by law. 1 Greenleaf, Evidence (16 Ed.), p. 115, sec. 20; 4 Wigmore on Evidence, p. 3582, sec. 2534; McCallister v. Ross, 155 Mo. 87; Miller v. Dunn, 62 Mo. 225; Blodgett v. Perry, 97 Mo. 272; Mitchener v. Holmes, 117 Mo. 211; St. Joseph to use of Gibson v. Farrel, 106 Mo. 441; Hammond v. Gordon, 93 Mo. 225; McClanahan v. West, 100 Mo. 323; Price v. Springfield R.

E. Assn., 101 Mo. 118; Brinley v. Forsythe, 69 Mo. App. 184; Long v. Mine & Smelting Co., 68 Mo. 430; Brown v. Oldmam, 123 Mo. 631; Williams v. Mitchell, 112 Mo. 310; State v. Lord, 118 Mo. 5; State v. David, 131 Mo. 393; State ex rel. v. Hoyt, 12 Mo. 355; Manning v. Coal Co., 181 Mo. 372: Clark v. Mead, 102 Cal. 516; Green v. Barker, 47 Neb. 947.

STATEMENT.—This action was instituted July 10, 1904. It is in the nature of an action of trespass to recover the value of timber alleged to have been cut and removed from plaintiff's land by the defendant company. The land on which the timber stood is in Wayne county, Missouri, and is the south half of the northeast quarter and the north half of the southeast quarter of section 22, township 29, range 26. The answer was a general denial. The jury returned a verdict in plaintiff's favor for $1,369, and judgment having been entered for that sum, the present appeal was prosecuted by the defendant. The error assigned is the refusal of the court to direct a verdict in defendant's favor. In support of this assignment, defendant's counsel contend there is no proof of possession, actual or constructive, in plaintiff at the time of the alleged trespass. Until the land was denuded by the defendant company, it was covered by a growth of pine timber. Plaintiff purchased it February 13, 1891, taking a warranty deed from Fred H. Brunning and wife. Plaintiff resides in St. Louis and has resided there, as we understand, since the time of her purchase. In May 1895, her husband went to Wayne county in her behalf, and had the line of the land run by the county surveyor and the corners established. The timber on the surrounding lands was cut away, but plaintiff's timber was respected until 1899, when it was cut and removed by the defendant company without her knowledge. Plaintiff paid taxes on the land from the time she purchased it and it was assessed in her name. There is testimony to show the chief officer of the defendant company knew the land

belonged to plaintiff; or, at least, that it did not belong
to the company. A witness who had been in defendant's
service, testified that on one occasion, in giving direc-
tions where to cut timber, its chief officer, said the com-
pany did not own the land from which the timber in con-
troversy was taken, and for the witness to cut no timber
on it. But, as said, the defendant subsequently did cut
and remove the timber. These facts are proved by testi-
mony for the plaintiff; the testimony for the defendant
not going to show any title to the land or right to take
the timber, but that, in point of fact, defendant did not
take it; a defense which the jury rejected. In support
of her title to the land plaintiff introduced a copy of a
patent from the United States to Robert Kirkham, dat-
ed September 10, 1859, and conveying the land in con-
troversy, a deed from Jas. D. Wingerd and wife to Fred
Brunning and wife, dated January 3, 1888, and a deed
from Fred Brunning and wife to plaintiff, dated Febr-
uary 13, 1891, and recorded on February 17th. Plaintiff
and her husband testified they had no other deeds. It
was proved the courthouse wherein the court and deed
records of Wayne county were kept was destroyed by
fire in December, 1892. Prior thereto James B. McGhee
had been circuit clerk and ex-officio recorder of deeds of
Wayne county, and while serving as such on February
25, 1891, had made for plaintiff an abstract of title to the
land in controversy as the title appeared from the re-
cords and deeds in his office. He swore he made it from
an examination of the indexes to the deed records, which
referred him to the pages of the record where the differ-
ent deeds were to be found and from an examination of
the full records of the deeds themselves; and that the
abstract he made was a true and correct abstract as
shown by those records. Though signed by him official-
ly, it is not a document required to be made by law and
does not import accuracy. The abstract was introduced
in connection with McGee's testimony and is as follows:

Kries v. Land & Lumber Co.

ABSTRACT OF TITLE—To Lands below described situated in the County of _____ and State of _____

| GRANTOR | GRANTEE | Kind Instru. | Date of Instr'mt | | | Date of Acknol. | | | Date of Filing. | | | Recorded | | Consid-eration. | Subdivision Town City or Addition | E & W | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | D | Month | Year | Month | D | Year | D | Month | Year | Bk. | Pge | | | Sec | Tp. | Rg. | Quantity Acres |
| United States | Robt. H. Kirkham | Patent | As shown by official plat of Wayne county, Mo. | | | | | | | | | | | | S½NE¼ N½ SE¼ | 22 | 29 | 6 | 160 |
| Robt. H. Kirkham | Samuel Ford | War'y | 30 | Aug. | 1870 | Aug. | 30 | 1870 | 30 | Aug. | 1870 | G | 636 | $ 640.00 | Same land described above. | | | | |
| Samuel Ford | T. L. Rousin | Tax D | 6 | April | 1882 | April | 6 | 1882 | 15 | May | 1882 | S | 107 | $ 6.25 | | | | | |
| T. L. Rousin [single] | J. T. Haite | War'y | 10 | May | 1882 | May | 10 | 1882 | 10 | April | 1883 | X | 106 | $ 880.00 | | | | | |
| J. T. Haite & wife | G. W. Hutchinson | " | 31 | Aug. | 1882 | Aug. | 31 | 1882 | 6 | June | 1883 | W | 121 | $ 2,000.00 | | | | | |
| G. W. Hutchinson & wife | Addie Reed | " | 1 | April | 1885 | April | 1 | 1885 | 19 | May | 1885 | W | 521 | $1.00 & ex for other property. | | | | | |
| Addie Reed & husband | Nelson S. Kaw | " | 27 | April | 1885 | April | 27 | 1885 | 19 | May | 1885 | W | 519 | In RE val $ 2,000.00 | | | | | |
| Nelson S. Kaw [single] | Calvin Moore | " | 26 | Feb. | 1886 | Feb. | 26 | 1886 | 1 | Nov. | 1886 | X | 479 | $ 320.00 | | | | | |
| Calvin Moore & wife | Jas. D. Wingerd | " | 12 | March | 1886 | March | 12 | 1886 | 9 | Sept. | 1886 | Z | 74 | $ 300.00 | | | | | |
| Jas. D. Wingerd & wife | Fred H. Bruning | " | 31 | Jan. | 1888 | Feb. | 2 | 1888 | 9 | Feb. | 1888 | Y | 363 | $ 2,000.00 | | | | | |
| Fred H. Bruning & wife | Anna Kries | " | 18 | Feb. | 1891 | Feb. | 18 | 1891 | 7 | Feb. | 1891 | 23 | 399 | $100.00 & ex of prop | | | | | |

The admission of the above abstract of title was objected to by counsel and an exception saved to the court's ruling. Such in substance, are the material facts in the case.

GOODE, J. (after stating the facts.) 1.—Counsel for defendant say there is no evidence for the jury tending to show actual possession of the land in plaintiff; a point we find it unnecessary to decide. Regarding the abstract of title, their position is that it was competent evidence in connection with McGhee's testimony in respect of all conveyances shown by it, except the tax deed purporting to convey the land for taxes to Samuel Rousin, dated April 6, 1882. That deed appears to have been made while the title to the land was vested in Samuel Ford. Without the tax deed a link is missing in plaintiff's chain of title, a fact which counsel insist defeats her constructive possession of the land as holder of the title; and, insist further that as she was not in actual possession, her action for the alleged trespass must fail. No point is made against the competency of the memorandum or abstract, on the ground that it could be used only as a means of refreshing the memory of the witness and not as secondary evidence of the record of the tax deed. Its admission as evidence to show the title of Ford had been transmitted by a tax sale is complained of because there is no proof, by recitals in the deed, or evidence aliunde, that such proceedings had occurred anterior to the sale for taxes, as were requisite in order to confer on the sheriff the power to sell. The statutory enactments in this state regarding sales of lands for taxes, have been altered from time to time, and it does not appear under what statutory authority the sale in the present instance occurred. If under the statute enacted in 1877, no form of deed is prescribed. [R. S. 1899, sec. 9305.] But in the absence of a statutory requirement regarding recitals in a tax deed, the general doctrine is that the deed must

contain recitals to show the sheriff had authority to sell. [Black, Tax Titles (2 Ed.), sec. 396; Einstein v. Gay, 45 Mo. 62; State v. Mantz, 62 Mo. 258; Guffy v. O'Reilly, 88 Mo. 418.] It was held in the case last cited that a deed made pursuant to the above statute must contain substantially the recitals which the preceding section of the statutes (9304) requires in the judgment. We suppose, too, recitals of the issuance of an execution on the judgment and due advertising would be proper, and perhaps essential. If the tax deed under which plaintiff derives title was in existence and contained none of the recitals essential to the validity of the sale, it could not be introduced in evidence; at least, without showing by other records that proceedings to justify a sale of the land for taxes had occurred. [Yankee v. Thompson, 51 Mo. 234; Guffy v. O'Reilly, supra.] But the deed is destroyed, and as to whether it originally contained the essential recitals there is no proof; nor is there proof aliunde of a judgment given against Ford for taxes, based on proper proceedings. Plaintiff's counsel invoke in aid of the deed, the maxim that all official acts are presumed to have been rightly and regularly done (*omnia praesumuntur rite et solemniter esse acta.*) Defendant's counsel insists this maxim has no application to tax deeds or the sales of lands for taxes and that, in such instances, the burden is on the party asserting the validity of the tax sale to show all the steps necessary to a good and valid sale were taken. No doubt this is the general rule established by an uninterrupted current of adjudications. [Morton v. Reeds, 6 Mo. 64; Yankee v. Thompson, supra; Hopkins v. Scott, 86 Mo. 144; Sullivan v. Donnell, 90 Mo. 278, 2 S. W. 275; Gregg v. Jesberg, 113 Mo. 34, 20 S. W. 652; Atkinson v. Improvement Co., 125 Mo. 565, 573, 28 S. W. 861; 2 Cooley, Taxation (3 Ed.), p. 955.] We do not accept as a sound reason for not adhering to the rule in the present case, the proposition advanced by counsel for plaintiff, that as sales of

land for delinquent taxes occur in this State, under its present laws, only after a judgment in an action regularly instituted and conducted according to due process and regular procedure, the validity of the sale should be presumed and the burden cast on the party challenging it to show some step essential to its validity was omitted. In support of this position they argue that the rule throwing the onus on the holder of the tax title to show it is good by affirmative proof, was established when such sales were summarily made, instead of after proceedings in due course of law. That the sales they had under review were summary and *ex parte,* was a fact often commented on by judges in declining to indulge presumptions to uphold them. Nevertheless, the rule against such presumptions rests on a broader foundation, namely; the principle of the common law which requires a person who obtains title to the property of another under legal proceedings which undertook to take the title from the original owner because of his alleged neglect of a public duty, to show the conditions existed on which the power is conferred by law to take the property—that in fact, a public duty had been neglected, and the attempted transfer of title by judicial process was according to regular procedure. [2 Cooley, Taxation (3 Ed.), p. 915.] This is because of the great loss often entailed by such forfeitures of property rights. We quote from Judge Cooley's work:

"At the common law it was necessary that one who claimed to have obtained title to property of another, under proceedings based upon a neglect of public duty, should take upon himself the burden of showing that the duty existed, and had not been performed, and that in the consequent proceedings the law had been complied with by those who had them in charge. Especially if the proceedings would operate with severity, and be in their effects something in the nature of a fortfeiture, the law was strict in its requirement that his evidence should

exhibit the proceedings from step to step, and show that each of the safeguards with which the statute had surrounded the delinquent for his protection in this very emergency had been duly observed. And this tenderness for his interests appears but reasonable. Of what service could it be that safeguards were provided, if observance was not essential; if a careless or incompetent officer might overlook or disregard them with impunity and deal with the property of the citizen as if his position as an officer of the government vested him with a dispensing authority over legislation, and authorized him to make, in his discretion, a law for the case as he proceeded.

"This rule of the common law has not been modified by decisions, and is still recognized and enforced where statutes have not changed it. It may consequently be said to be the general rule that the party claiming lands under a sale for taxes must show affirmatively that the law under which the sale was made has been substantially complied with, not only in the sale itself, but in all the anterior proceedings." [2 Cooley, Taxation (3 Ed.), 915.]

The doctrine thus expressed has been declared in substance by the Supreme Court of this State from its earliest decisions, in construing every enactment which has been on our statute books regarding the sale of land for taxes. [Morton v. Reeds, 6 Mo. 64; Reeds v. Morton, 9 Mo. 868; Yankee v. Thompson, 51 Mo. 234.] But the reason for the acceptance of the doctrine defines its limits. It exists for the protection of the owners of property whose estates are sacrificed by judicial sales for their omissions of public duty. It is for them the law requires various acts to be done before their property can be sold; and if some official fails to perform one of the essential acts, the legal rights of the citizens having been ignored to that extent, his property cannot be taken from him.

Hence we think the rule applies only in cases where the contest is between the purchaser at the tax sale, or someone claiming under him, and the original owner or person claiming under the latter; or, at most, in controversies between the holder of the tax title and some one asserting another title. It ought not to be applied in a case between the owner under a sale for taxes and an intruder who injures the inheritance without any claim of title or pretense of right to enter on the premises. In such an instance the reason fails for making the proceedings leading to the tax sale an exception to the general maxim that official acts are presumed to have been properly done; and, therefore, the maxim ought to prevail. On searching the books we have found decisions and statements by commentators that it does prevail. The qualification of the rule that no presumption is indulged in favor of the validity of a tax title, but that all the essentials of a valid sale must be affirmatively proved, is defined in a standard treatise in language which shows presumptions are indulged in favor of the validity of a sale as against a trespasser, or a stranger to the title.

"The rule that the onus is upon those who claim under a tax sale is confined to controversies between the owner of the tax title and the original owner of the land, or those who claim under him, and is never applied in favor of an intruder upon the land; a mere trespasser who cuts timber or does other injury to the inheritance, or a mere stranger showing no title or interest in the premises sold for taxes." [2 Blackwell, Tax Titles (5 Ed.), sec. 1133.]

The leading authority in regard to presuming in favor of a tax title against a mere intruder who enters without any pretense of right, is Foster v. M'Divit, 9 Watts (Pa.) 341. Until the year 1815 the law in Pennsylvania in regard to tax sales so rigorously exacted of the purchaser of a tax title positive proof of the tak-

ing of every antecedent step essential to a valid sale, that it was considered impossible to sustain such a title in a contest with the original owner or any person claiming under him. This infirmity in the law was remedied by legislation; but prior thereto a series of decisions, of which the one cited was the pioneer, had established the rule that in a controversy between the holder of a tax deed and a naked trespasser, the validity of the tax title would be presumed. In Foster v. M'Divit, some question was made about the tax claimant having been in actual possession; but the opinion dealt with the case, too, on the supposition that the defendant was an intruder and the plaintiff out of possession. The trial court had instructed, in effect, that unless the plaintiff and those under whom he claimed, had such possession as would give title by limitation, the action must fail without regard to whether the defendant's entry on the land was right or wrong, or whether he had title to the land. In commenting on this instruction, the Supreme Court of Pennsylvania said:

"Previous to the act of 1815, as has been correctly said, it was repeatedly held, that to rest a title in the purchaser of lands sold for taxes, an exact and minute adherence to the direction of the laws is necessary. It must appear that every direction and requisite of the acts has been judicially complied with. [2 Yeates, 101, 812; 3 Yeates, 284.] But this rigid principle is only true, as between the purchaser at the tax sale, and the person who is the owner of the land, and those claiming under him. It cannot be intended to protect an intruder, or trespasser; for as against a person who enters without right, an actual possession or such a constructive possession as a purchaser at a tax sale obtains, is all that the law requires." [Foster v. McDivitt, 9 Watts 344.]

In Dikeman v. Parrish, 6 Pa. St. 210; the same

question arose, it being contended the plaintiff's action
must fail because he had not proved strict compliance
with the law in support of his tax deed.   The court re-
marked that, after showing the Commonwealth had
parted with the land and it had been assessed for taxes
in the name of the warrantee, the plaintiff gave in evi-
dence a deed of the sheriff, which was potent enough to
put a stranger to the title on his defense.   In Foust v.
Ross, 1 W. & Sar. 501, an ejectment case, one link in the
plaintiff's chain of title was a tax deed, but no posses-
sion had been taken thereunder.   The court said:

"An actual possession, or such constructive posses-
sion as a purchaser at a tax sale has, is all that is re-
quired against one who enters without right.   All that
is required of a plaintiff in ejectment, in the first in-
stance, after showing such title as he purchased to have
been granted by the Commonwealth, is to prove the land
was sold for taxes assessed, and exhibit his deed as
against an intruder.   This is such a prima facie title, as
to put the defendant to the necessity of showing a better
right.   A treasurer's deed and subsequent payment of
taxes, is sufficient to recover against one who enters
without title. If this case (i. e., Foster v. M'Divit) which
had but lately been published, had been seen at the
trial below we may suppose this cause would not have
been brought to this court."

The same doctrine is declared in Sherer v. Wood-
man, 10 Pa. St. 511; Crumb v. Burke, 25 Pa. St. 377 and
Troutman v. May, 33 Pa. St. 455.   In commenting on the
foregoing Pennsylvania cases, a text writer says their
doctrine is probably sound.   [Black, Tax Titles (2
Ed.), sec. 455.]   Nor is the rule confined to a single jur-
isdiction.   In Smith v. Bodfish, 27 Maine 289, 293, which
was an action for cutting and removing timber from the
plaintiff's land, the only evidence of possession offered
by the plaintiffs were certain tax deeds; and it was held
these would have been sufficient to enable plaintiffs to

maintain trespass if the defendant had shown no semblance of ownership and stood in the light of a mere trespasser. In that event, the court said it would not be permissible for him, under the general issue, to object that the Treasurer of the county who sold the land for taxes, had not observed the rules of law in making the sale. In Bellows v. Elliott, 12 Vermont 569, 575, an action of trespass, the court said regarding the rule requiring a purchaser at a tax sale to prove all legal requirements had been complied with, that there ought to be a difference in the rules applied when the previous owner contested such proceedings, and when they were objected to by a mere stranger or trespasser; but it was found unnecessary to pass on the question. In Treat v. Orono, 26 Maine 217, the plaintiff claimed to recover the amount of a promissory note made to the treasurer of the town in payment of land conveyed to the plaintiff by the county treasurer pursuant to a tax sale. The ground on which reimbursement was claimed was that no title had passed by the tax sale and, hence, there was no consideration for the note. It was held the law presumed officials performed their duties legally, and the burden was on the plaintiff to show a failure of the consideration by proving every fact necessary to make good his contention that the sale was void. This decision shows the doctrine against indulging presumptions in favor of the validity of tax sales is not of universal scope, but has limitations which prevent its extension to cases in which the facts afford no reason for its application. In Dejarnet v. Haynes, 23 Miss. 600, a person having no interest in the land in dispute was not allowed to question the constitutionality of an act under which the land had been sold for taxes and his adversary had acquired title. In Wells v. Iron Co., 48 N. H. 491, 533, the Supreme Court of New Hampshire said, in commenting on objections raised to a tax deed in the defendant's chain of title:

"We have not given much attention to these eight objections to this deed, or to any of them but the seventh. It may be proper to remark in relation to all of them, that they are not made by any party who appears to have any interest in the land described in the deed or in the sale of the same for taxes, and that so long as the plaintiff shows no title to the premises in question, he is in no position to raise any objections to the defendant's title. No parties interested as owners of the land sold for taxes, have objected or do object that the sale was not legal and proper; and so long as that is so, it does not lie in the mouth of third persons who show no title or interest whatever in the premises sold, or in the land here in dispute, to object to the sale, or the form of the deed, or to any proceedings connected with such sale."

In view of the foregoing authorities and the principles they announce, we feel justified in holding in the present contest between the plaintiff and the defendant company, which has shown to have had no color of title to the timber in controversy or any sort of right to enter on the land where it grew, that the proceedings leading up to the tax deed in plaintiff's chain of title should be presumed to have been regular, and therefore, that she had the legal title and constructive possession at the time of the trespass by defendant.

The destruction of the tax deed by fire having been proved, secondary evidence of its contents was admissible. [2 Wigmore, Evidence, sec. 1267; Perkins v. Fielding, 119 Mo. 149, 24 S. W. 444, 27 S. W. 1100; Hall v. Gallemore, 138 Mo. 638, 642, 40 S. W. 891; Stephen v. Metzger, 95 Mo. App. 609, 69 S. W. 625.]

A point to which we have given serious attention is whether or not the proof of the contents of the lost deed was sufficiently full to justify the admission of secondary evidence; that is to say, whether the essential parts of the deed were substantially established. It is apparent that it would be very impolitic and dangerous to ad-

mit secondary evidence of a lost instrument when the evidence did not disclose some of its material parts; because thereby a wholly erroneous conception of the legal effect of the document might be imparted. The rule is that the material parts of the contents must be proved in substance. [3 Wigmore, Evidence, sec. 2105; McDow v. Irwin, 32 Ga. 39, 50; Perry v. Burton, 111 Ill. 138.] In the present case McGhee's testimony shows the tax deed was executed by the sheriff of the county. The abstract of the deed contained in the memorandum shows it was a tax deed and the dates of its execution, acknowledgment, filing, and recording, the book and page where it was recorded, the consideration paid and the description of the land. Its delivery to the grantee is not shown, but may be presumed from the recording, as was decided regarding a sheriff's deed in Kane v. McCown, 55 Mo. 181. Those constituents unquestionably would be sufficient proof of the material parts of an ordinary deed between parties. This has been adjudged. In Perry v. Burton, 111 Ill. 138, it was said a witness can be expected to remember no more of the contents of a lost deed than the names of the grantor and grantee, about what time it was made, for what consideration and whether it was a warranty or a quitclaim; that to require more would amount in most instances, to the practical exclusion of oral evidence to show the contents of lost instruments. A careful opinion is found in Bennett v. Waller, 23 Ill. 97. In that case the title to great property rights turned on the proof of the contents of a lost instrument, and it was strenuously insisted the testimony adduced did not prove its contents with sufficient fullness to be admissible. On this point the court said the witness gave the proximate date of the deed, swore the consideration was not large, described the land satisfactorily, stated who the grantors and grantees were and that the deed was a quitclaim. This was held proof enough; the court saying that parol proof of the con-

tents of lost instruments must leave no reasonable doubt of the substance of their material parts. The court drew a sound distinction, too, in declaring that what would be vital in one paper, or under certain circumstances, might be quite immaterial in another paper or under other circumstances; that in an action brought on a lost note, the precise sum mentioned in it would be material, while the precise consideration recited in a deed would be of secondary importance. Further, that under some circumstances it would be of the greatest importance to know whether the deed contained covenants and warranties of a certain character; for instance, in an action on an alleged covenant. Now in the present case the sole question regarding the tax deed was whether or not it contained enough to pass Ford's title to Rousin, the purchaser at the tax sale. We have all the essential elements of a conveyance of that kind except recitals to show prima facie that the official acts requisite to a sale of land for taxes, were legally performed; and these, we have held, should be presumed in a controversy like this one. Our opinion is the parts of the deed shown in the abstract, taken in connection with the testimony of McGhee, sufficiently revealed its contents to make the evidence admissible. On the general question of how much of a lost document must be shown in order that secondary evidence may be considered, we refer to Perkins v. Fielding; Hall v. Gallemore; McDow v. Irwin, supra; Wilkerson v. Allen, 67 Mo. 503; Thompson v. Thompson, 9 Ind. 323; Collier v. Corbett, 15 Cal. 183; Kenniff v. Caulfield, 140 Cal. 134, 144; Holmes v. Deppert, 122 Mich. 275, 280.

The judgment is affirmed. All concur.